## Herrick v. Lynch et al.

49   657
150s 283

1. *Fraud—Parties in Pari Delicto—Attorney and Client.*—Equity will not tolerate the idea that an attorney may make use of his peculiar power over his client to procure a contract, which is illegal and contrary to public policy, and to then invoke the aid of the law to enable him to retain that which he has obtained through his fraudulent artifices.

2. *Fraud—Pari Delicto—The Rule in Equity Not Always Applied.*— L., being indebted to different persons, applied to H. for legal advice, procured from him a small advance of money, and under his advice conveyed to him a large amount of property, ostensibly for the purpose of securing H., but really for the purpose of hindering his creditors. H. having received the return of the amount of money advanced by him out of the rents and profits, a proceeding in chancery was had to compel, among other things, a re-conveyance of the property. *It was held,* that the parties being, one, legal adviser and the other client, and by the advice of the former being adopted, he procured the latter's interest in real property, they were not in *pari delicto,* and that the rule of equity which denies relief to one party against another when both have engaged in a fraudulent transaction should not be applied.

3. *Conflict of Testimony—Master's Report.*—Where there is a conflict of testimony before a master on a reference to state an account, the court will not feel warranted in disturbing the finding upon the ground that it is against the weight of the testimony, as the master who heard the testimony and stated the account saw the witnesses and observed their manner of testifying, and had superior opportunities for judging correctly of their credibility.

4. *Jurisdiction—Right to Question Waived by Answering.*—Where a court of chancery obtains jurisdiction of the parties, and the subject-matter of a controversy involves, incidentally, matters of account between the parties, there is no necessity in litigating the accounts by piecemeal. In such cases a party answering generally, waives his right to question the jurisdiction of the court to state the account.

**Memorandum.**—Bill for partition and relief. Appeal from the Circuit Court of DeKalb County; the Hon. CHARLES KELLUM, Judge, presiding. Heard in this court at the May term, 1893, and affirmed. Opinion filed December 12, 1893.

The statement of facts is contained in the opinion of the court.

### STATEMENT OF THE CASE.

In the year 1888, Thomas Lynch, Sr., died in De Kalb County, seized of two farms, one in De Kalb County, and one in La Salle County, leaving no widow, but seven children, his only heirs at law. His son, Thomas Lynch, Jr., was appointed administrator of his estate, and during his administration invested a part of the funds of the estate in the purchase of lot three in Mallory's addition to Leland in La Salle County, and had a conveyance of the same made

to himself and his brother, Charles Lynch. Subsequently a conveyance was obtained from George Lynch, one of the children, of his interest in the real estate of his father, to Thomas and Charles Lynch. A reckoning was had between Thomas and Charles and the other children, and $2,300 was borrowed by Thomas from one Meinke, to make good funds which he had appropriated from the personal assets of the estate, and at the same time Charles borrowed from the same party $700, the other children becoming security for Thomas and Charles. Thomas secured a deed from Charles of his interest in the town lot in Leland, and he and Charles executed to their brothers and sisters a mortgage on all of their interest in their lands for the purpose of indemnifying them as surety on the indebtedness to Meinke. On the 7th of August, 1890, one Llewellyn obtained judgment against Thomas and Charles for $200. On the 12th of August, 1890, appellant, George J. Herrick, obtained judgment against Thomas and Charles on a note of $175, upon which Charles was surety. On August 5, 1890, Charles executed and delivered to his brother, James Lynch, a mortgage for $2,000 on all his interests in the real estate. On the 17th and 18th days of December, Thomas executed quit claim deeds to Herrick of all his interest in the real estate inherited from his father, and the town lot in Leland. In May, 1891, a bill for partition of the farm lands, and for an accounting between the parties interested therein was filed by all the children, except Thomas, making Thomas and appellant parties defendant. The bill charged default upon the part of Thomas in failing to indemnify the complainants as surety upon the Meinke indebtedness, and asked that the rents and profits of lot three received by Herrick, after his purchase from Thomas, be paid over on such indebtedness, and asking a foreclosure of the mortgage given by Thomas to his brothers and sisters on said town lot three. In June, 1891, an amendment to the bill was filed, setting up the judgment mentioned above, against Charles and Thomas, and the mortgage indebtedness from Charles to James, and alleging that it was about $1,200. Herrick an-

swered, denying the validity of the mortgage from Charles
to James, averring that it was given for no consideration,
and for the purpose of defrauding the creditors of Charles.

Thomas failing to answer, a default was entered against
him. A decree was entered finding the title in the farm
lands as above set forth, finding that Herrick owned an un-
divided three-fourteenths, subject to the incumbrances, by
virtue of his purchase from Thomas, and appointing com-
missioners to partition the lands. The commissioners re-
ported that the lands were not susceptible of partition and
appraised the same at $13,770. A decree for sale was en-
tered and in October, 1891, the lands were sold under the
decree for $16,210. A few days before the sale Thomas
filed an interpleader charging that Herrick held title to his
interest in the real estate simply as security for the note
upon which judgment was entered against him and Charles;
that Herrick had collected rents on the lot amounting to
$137 which should be applied upon the note, and that he
had offered to pay Herrick the balance due him and re-
quested a reconveyance, which was refused. The inter-
pleader asks that the master in chancery, out of the pro-
ceeds of the sale may pay what balance may be due Herrick,
and that Herrick be required to re-convey lot three to him.
He subsequently filed an amendment to his bill in which he
claims to have paid other moneys to Herrick. The ques-
tions of accounting, liens, and the validity of the mortgage
from Charles to James having been reserved, the case was
referred to the master in chancery to take proofs and make
findings as to all the matters pertaining thereto, and the
controversy between Herrick and Thomas Lynch, it being
agreed that Herrick should be considered as denying all the
material allegations in the so-called interpleader.

There was no controversy on the general question of ac-
counting between Thomas Lynch and his brothers and sis-
ters, but the contest was as to the validity of the mortgage
from Charles to James, and as to whether the deeds from
Thomas to Herrick were given only as security for indebt-
edness held by Herrick against Thomas and Charles merely,

or were absolute conveyances, and whether Thomas advanced to Herrick the sums of moneys claimed by his amended interpleader. The master reported adversely to Herrick on all of the controverted questions. Exceptions were filed to his report and upon a hearing the court overruled the same and rendered a decree approving the master's report; finding that the note and mortgage from Charles to James was valid and security for a debt of $1,270 with interest; finding the deeds from Thomas Lynch to Herrick were given as security only for indebtedness and should be treated as mortgages; that the indebtedness from Thomas Lynch to George J. Herrick had been paid; that Thomas Lynch advanced to George J. Herrick the sum of $490 over and above the net rents of lot three; that the rents had overpaid Herrick $150.78, and ordered that Herrick pay to Lynch the $150.78. From this decree Herrick appealed.

Appellant's Brief, Carnes & Dunton, Attorneys.

It would be mere affectation to cite many authorities to the effect that a court of equity will not aid a fraudulent transaction. A court of equity so abhors a fraud that it will take up the objection of its own motion, if it appears from the bill or the evidence, whether the defendants interpose it or not. Kerr on Fraud and Mistake, 374; Hamilton v. Ball, 2 Ir. Eq., 191.

It does not matter whether creditors are in fact defrauded or if, in fact, there was a mistake as to whether there was a valid debt, or whether the transaction could operate to defraud. If there was the intent to defraud, equity will not interfere. Greenhood Pub. Policy, 167.

Equity will not aid to enforce secret trust by grantor in grantee in fraudulent conveyance. McElroy v. Hiner, 133 Ill. 156.

Appellees' Brief, Jones & Rogers and T. M. Cliffe Attorneys for Thomas Lynch, Jr., Luther Lowell, for James Lynch.

The appellees contended that Herrick was, in fact, Thomas

Lynch's attorney and was acting for him as such. His relations toward him were as an attorney to his client.

Lord Chelmsford in Tate v. Williamson, L. R. 2 Chan. App. Cas. 55, lays down the rule as follows : " Whenever two persons stand in such a relation that while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no confidential relation had existed."

It is not the doctrine of courts of equity that attorneys are, by their fiduciary position, wholly incapacitated to purchase from their clients; nor does such incapacity ordinarily exist in case of other fiduciary relations. The rule, however, is that the presumption is always against the validity of transactions of that character, and the burden is on the attorney to remove that presumption, by showing affirmatively the most perfect good faith, the absence of undue influence, a fair price, and knowledge, intention and freedom of action on the part of the client, and also that he gave his client full information and disinterested advice. Roby v. Colehour et al., 135 Ill. 341.

The relation of attorney and client being one of special trust and confidence, the law requires that all dealings between them shall be characterized by the utmost fairness and good faith, and it scrutinizes all transactions had between them. So strict is the rule, that dealings between them are held as against the attorney to be *prima facie* fraudulent, and the burden is not upon the client to establish fraud and imposition, but it rests upon the attorney to show fairness, adequacy and equity. Morrison et al. v. Smith, 130 Ill. 305.

OPINION OF THE COURT, HARKER, P. J.

The controverted questions in this case are :

First. Whether the quit-claim deeds executed and deliv-

ered to appellant on the 17th and 18th of December, 1890, were given to secure indebtedness to be treated in equity as mortgages, or were absolute conveyances.

Second. Whether, in the event of that question being decided against appellant, relief should not be denied Thomas Lynch, on the ground that the conveyances were made with the fraudulent purpose of hindering and delaying creditors.

Third. Whether Thomas Lynch advanced to appellant the sums of money claimed by the amended interpleader, as it is called in this case, and allowed by the master in chancery.

Fourth. Whether the alleged advances to appellant could become the subject of adjudication in a court of equity.

Fifth. Whether the mortgage from Charles Lynch to James Lynch was made in good faith and valid.

The evidence in this record shows that Thomas Lynch, through mismanagement in the administration of his father's estate, had become largely indebted to the estate and involved in difficulties with his brothers and sisters. In his embarrassment he applied to appellant, a lawyer without license, for advice and financial aid. Appellant furnished him some money and undertook, through his advice, to lead him out of his difficulties. We entertain but little doubt that while appellant was thus acting as a legal adviser, various schemes by which creditors of Thomas could be defeated of their claims were discussed and considered by the two. We are of the belief that these schemes were suggested by appellant.

We have carefully examined the testimony, and have reached the conclusion that the master's report, and the finding of the court that the deeds from Thomas Lynch to appellant were given as security for indebtedness, and should be treated as mortgages, were correct. It was a large amount of property to secure so small an indebtedness, and one of the purposes may have been to prevent other creditors from reaching it. We do not think, however, that under the

circumstances there should be an application of that rule of equity which denies relief to one party against another when both have been engaged in a fraudulent transaction.

The parties were not *pari delicto*. One was legal adviser, the other client. The advice of the former being adopted, he procured title to the latter's interest in valuable real estate. Equity will not tolerate the idea that an attorney may make use of his peculiar power over his client to procure a contract, which is illegal and contrary to public policy, and to then invoke the aid of the law to enable him to retain that which he has obtained through his fraudulent artifices. 1 Story's Eq. Jur., Sec. 300; Baehr v. Wolf et al., 59 Ill. 474.

We do not feel warranted in disturbing the finding as to the state of accounts between appellant and Thomas Lynch, and the order that appellant should pay Thomas the sum of $150.78. There was a sharp conflict between the parties on this branch of the case. The master who heard the testimony and stated the account, saw the witnesses and observed their manner of testifying. His opportunities for judging correctly their credibility were superior to ours.

We think the court had jurisdiction to adjudicate upon the matter of advances made by Thomas Lynch to appellant. Having obtained jurisdiction of the parties and the subject-matters, there was no necessity of litigating over these accounts by piecemeal. Having answered to the so-called interpleader and taken issue upon the claim of this indebtedness, he waived all right, if he had any, to the question of jurisdiction.

The views above expressed fully dispose of the contention that the mortgage from Charles Lynch to James Lynch was invalid.

We may say, however, without entering into detail upon the merits of that question, that the evidence satisfies us that the mortgage was made in good faith. Decree affirmed.