## A. B. Lawther and F. O. Swannell v. Margaret V. Thornton et al.

1. NEGOTIABLE INSTRUMENTS—*Authority of Agent in Possession to Receive Payment of.*—An agent intrusted with, and in possession of, a negotiable or other instrument, is deemed by the fact of such possession to be authorized to receive payment of the instrument in accordance with its terms, when and after it becomes due, and not otherwise.

2. MASTER IN CHANCERY—*When Findings Conclusive.*—When the testimony before a master consists very largely of the oral statements of witnesses, made in his presence, his findings are not to be set aside unless it is clear he was mistaken and has come to an erroneous conclusion upon the facts.

3. AGENCY—*Subsequently Discovered Facts will not Justify a Presumption of the Existence of.*—A person who has dealt with the supposed agent of a third party, who, in fact, had no authority, can not be heard to say that transactions of which he was not aware when he assumed the existence of such authority, justified him in such assumption.

4. MORTGAGE—*Satisfaction of, Not Always Conclusive.*—Where an agent has, in advance of its maturity, collected a note payable to his principal, and has satisfied a mortgage made to himself as trustee, to secure the payment of such note, a person knowing these facts and seeking to acquire an interest in the property covered by such mortgage, may not rely upon such satisfaction, but is bound to inquire whether the agent was authorized to receive payment of the note and to release the security.

**Bill,** to foreclose mortgage. Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the October term, 1896. Reversed and remanded with directions. Opinion filed November 19, 1896.

### STATEMENT OF THE CASE.

On or before March 1, 1888, Margaret V. and Catherine V. Waite, of Chicago, applied to Charles W. Griggs, who was an attorney-at-law, engaged in the practice of his profession in Chicago, to procure a loan of $3,000. Griggs at that time had a client by the name of Lawther, living in Syracuse, N. Y., for whom he had loaned considerable money. He therefore arranged to make the loan to the Waites, for Lawther. Margaret V. and Catharine V. Waite

thereupon executed and delivered a promissory note, dated March 1, 1888, for $3,000, payable to A. B. Lawther, at the Merchants National Bank at Chicago, March 1, 1893, with six per cent interest, payable semi-annually, and ten interest coupon notes for ninety dollars each, evidencing said interest. Margaret V. Waite, who at that time was unmarried, held the title to the property described and involved in this suit, and to secure the principal note and interest mentioned, conveyed the premises by trust deed to Charles W. Griggs, trustee, and F. O. Swannell, successor in trust.

These papers were retained in Chicago, in a safety vault, to which Griggs had access, and as the installments of interest became due, they were paid to Griggs, who canceled and surrendered the coupons and accounted for the interest to Lawther.

Subsequent to the execution of these papers Margaret V. Waite conveyed the premises to her sister, Lucy C. Waite, who assumed and agreed to pay the indebtedness.

Prior to the maturity of this indebtedness the Waites, desiring to procure a loan of $10,000 on this property from the North Western Mutual Life Insurance Company, on December 20, 1892, paid to Griggs the sum of $3,077. Griggs produced the securities, the note bearing upon its back the name of A. B. Lawther, canceled the original note, the last coupon and the trust deed, executed a release and surrendered the papers to the Waites, who thereupon procured a $10,000 loan from the insurance company; the bond and mortgage for the same being executed by Lucy C. Waite, Catherine V. Waite and Charles B. Waite, the husband of Catherine. The indorsement "A. B. Lawther," on the back of the $3,000 note and coupon was a forgery.

At the maturity of the $3,000 loan, Griggs accounted to Lawther for the last installment of interest, and reported to Lawther that the principal of the loan had been extended for three years. Griggs died in April, 1894, and immediately following his death Lawther discovered the execution of the release and that the papers were gone. He thereupon filed his bill to foreclose the trust deed given to secure

the $3,000 loan, alleging that Griggs had no authority whatever to receive payment of the indebtedness before its maturity, nor to execute a release of the trust deed and surrender the papers; that no part of the principal of the indebtedness, and no part of the interest, subsequent to the maturity, had ever been paid or accounted for to him; and praying that the release deed be set aside as a cloud upon the title to said premises; that the trust deed to Griggs be declared to be a first and valid lien upon the premises; that an accounting be had between the parties, and that the defendants, the Waites, be decreed to pay him whatever was found to be due him by the court, and that in default of such payment the premises be sold, etc.

The appellees, the Waites, answered alleging payment to Griggs on or about December 20, 1892; that the papers were canceled and surrendered to them and the release executed and delivered; that Griggs was the general agent of Lawther and had full power and authority to receive payment of the indebtedness and to cancel and surrender the papers and execute a release at any time; that the indebtedness has been fully paid and the trust deed released and discharged.

The North Western Mutual Life Insurance Company answered alleging that it did not know whether the indebtedness had been paid to Griggs or not, but that when applied to for a loan, it had ascertained of the existence of this trust deed, and required the trust deed to be released before it would make the loan of $10,000. That subsequently Charles B. Waite delivered to it the canceled note and coupons and trust deed, as they appear in evidence, and the release deed, executed by the trustee; that relying upon these records they made the $10,000 loan, and took the mortgage introduced in evidence as security, and it insists that whether or not the indebtedness has been paid to Lawther, the release deed executed by Griggs was effectual to clear the title and give the insurance company a first lien upon the premises.

The case was referred to a master to take proofs and report the same with his conclusions thereon.

Lawther v. Thornton.

The master found and reported to the court that Griggs had no authority, either actual or apparent, to collect the indebtedness before its maturity, and cancel and surrender the papers and release the trust deed, and that as to the appellees, the Waites, the payment made by them to Griggs was unauthorized and made to one who had no authority to receive it, and that between them and the appellant, Lawther, the Waites are still liable for the principal note and interest thereon, from the time of its maturity.

As to the appellee, the North Western Mutual Life Insurance Company, the master found that under the circumstances of this case the release deed executed by the trustee Griggs, was effectual to clear the title of the property so that the mortgage to the insurance company was a first lien for the amount of the loan made by it, and the trust deed to Griggs became a second lien for the amount of the indebtedness secured by it.

To this report appellants A. B. Lawther and F. O. Swannell, who was made a party complainant as successor in trust under the trust deed, filed objections to the findings of the master relating to the insurance company, in which objections it was assigned as error that the master found the release deed to be effectual to give the insurance company a first lien, and that he did not find the trust deed to Griggs was a first lien on the premises.

Appellees, the Waites, and by which we mean all of the defendants except the insurance company (although subsequent to the execution of the papers Margaret V. Waite has, by marriage, become Margaret W. Thornton, and Lucy C. Waite has, by marriage, become Lucy Waite Robinson) filed objections to the master's report, which objections by order of court stand as exceptions. Upon hearing of the exceptions before the court the Waites filed amended exceptions.

The court entered a decree in which the exceptions of appellants, so far as they relate to the insurance company, were overruled, and the master's report as to the insurance company approved and confirmed, and as to the Waites, the

court sustained the exceptions of said appellees consistent with the facts and conclusions found in the decree, and overruled all others.

The court further finds in the decree that Griggs was the general agent of Lawther in the business of loaning money in Chicago, and that the payment by the Waites to Griggs was a valid payment to Lawther, and the mortgage thereby paid and satisfied, and the indebtedness extinguished. It was adjudged and decreed that the bill be dismissed for want of equity, and that appellees have execution for cost by them expended.

MANN, HAYES & MILLER, attorneys for appellants.

Where a person, in a suit against him on a note by the payee, claims payment to an agent, having sufficient evidence of apparent authority to protect him, no facts and circumstances of which he had no knowledge at the time the payment was made, are competent to prove apparent authority, because he could not be deceived by what he did not know. Crane v. Gruenwald, 120 N. Y. 274.

The fact that an agent has made a loan for his principal, is named as the trustee, has collected the interest and retained the papers in his possession, is not sufficient evidence either of his actual or apparent authority to permit him to collect the principal of a note before its maturity. 2 Parsons on Notes and Bills, 213; Story on Agency, Sec. 98; Smith v. Kidd, 68 N. Y. 141; Thompson v. Elliott, 73 Ill. 221; Padfield v. Green, 85 Ill. 529; Stiger v. Bent, 111 Ill. 328; Doubleday v. Kress, 50 N. Y. 410; Crane v. Gruenwald, 120 N. Y. 274; Am. & Eng. Enc. of Law, Vol. 18, page 198.

The principle established by the authorities cited, is, that vesting an agent with authority to carry out the terms of a bond, note or contract, gives him no authority whatever to vary or change the terms of the instrument.

Evidence of authority to loan, to collect interest, etc., is no evidence of authority to collect principal, and no such inference can be drawn therefrom. Rich v. Smith, 60 Howard's Practice, 13; Story on Agency, Sec. 98; Thomp-

son v. Elliott, 73 Ill. 221; Cooley v. Willard, 34 Ill. 68; Garrells v. Norton, 26 Ill. App. 433; Austin v. Thorp, 30 Iowa, 376; Stiger v. Bent, 111 Ill. 328.

MONROE & THORNTON, attorneys for appellees; C. B. WAITE, of counsel.

W. P. THORNTON, attorney for Margaret V. Thornton and Catharine V. Waite, appellees.

HOYNE, FOLLANSBEE & O'CONNOR, attorneys for The Northwestern Mutual Life Insurance Company, appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

An agent intrusted with, and in possession of a negotiable or other instrument, is deemed by the fact of such possession to be authorized to receive payment of the instrument in accordance with its terms, when and after it became due, and not before.

The Supreme Court of this State in Thompson v. Elliott, 73 Ill. 221, says: "And it is further laid down by the authorities, that an agent, intrusted to receive payment of a negotiable or other instrument, is ordinarily deemed entitled to receive it only when and after it becomes due, and not before it becomes due; but if there be a known usage of trade or course of business in a particular employment, or habit of dealing between the parties, extending the ordinary reach of the authority, that may well be held to give full validity to the act." Story on Agency, Sec, 98; Paley on Agency, by Lloyd, 290, 291.

The presumed authority of the agent in such case is to receive payment of the instrument when or after it is due, in accordance with its terms, and is not to receive in satisfaction thereof anything except what the instrument calls for. Padfield v. Green, 85 Ill. 529; Am. & Eng. Ency. of Law, Vol. 18, 198; Keohane v. Smith, 97 Ill. 156; Doubleday v. Kress, 50 N. Y. 410; Crane v. Gruenwald, 120 N. Y. 274.

It is urged by appellee that Griggs was the general agent

of appellant, and that therefore he is to be presumed to have had authority to do what he did, viz., receive upon a note of appellant, before it was due, an amount of money in satisfaction thereof not equal to what the note called for when due, and for such less sum to surrender said note to the makers thereof.

A general agent is one authorized to transact all business of a particular kind; or a general agency may be stated to be an authority to act in a certain character; and a special agent has an authority to do a particular act. Ewell's Evans on Agency, pp. 1 and 135.

The distinction drawn in Paley on Agency is, that the authority is general or special with reference to its subject, that is, according as it is confined to a single act, or is extended to all acts connected with a particular employment.

Story, in his work upon Agency, adopts the same distinction.

The question whether Griggs is to be termed a special or general agent, is not of so much consequence, as is what it was he was authorized to do. The master to whom this cause was submitted, found as a matter of fact, and as reported to the chancellor, that Griggs had no actual authority from Lawther, the owner of the note to collect it before it became due.

The testimony before the master consisted very largely of the oral statements of witnesses made in his presence; he alone of all who have judicially passed upon this case saw and heard the witnesses; he, therefore, was in a better position to determine the truth in respect to this matter, than was the chancellor or is this court. Under such circumstances the finding and report of the master is not to be set aside, either by the chancellor or this court, unless from a reading of the evidence upon which the master acted, it is clear he was mistaken and has come to an erroneous conclusion upon the facts. Daniel's Ch. Pr., 1299, note 5; Izard v. Bodine, 1 Stock. 9, N. J. Equity 309; Sinnickson v. Bruere, 9 N. J. 659; Howard v. Scott, 50 Vt. 48; Herrick v. Lynch, 49 Ill. App. 657; Williams v. Lindblom, Ill. Opinion Nov. 9, 1896.

Lawther v. Thornton.

After a careful examination of the evidence, we are unable so to say, and we think that the conclusions of the master as to the facts should have been sustained by the chancellor, and must be by this court.

The evidence does not warrant the conclusion that in respect to loaning money and receiving payment therefor, Griggs was authorized to stand in the place of his principal; nor does the character and relation of the parties warrant such an inference.

Lawther, a man of means, desired to loan his money upon satisfactory real estate security; his interests lay in keeping his money well loaned out, and not in abating interest and receiving payment on obligations running to him, before they became due. It is well known that investors, as a rule, dislike to change securities; the longer any security has stood fulfilling the purpose for which it was made, without flaw discovered in, or attack made thereon, and with prompt payment of interest secured thereby, the stronger becomes the presumption that it is flawless. To abate interest and surrender such security before it becomes due, involves the trouble and risk of obtaining a new and equally valid pledge, and is, as we have before stated, a thing which, as a rule, investors are exceedingly loth to do.

It is urged that the conduct of appellant in respect to his dealings with Griggs was such that appellees had a right to presume that Griggs was authorized to receive payment of the note in question before it became due. It does not appear that appellees, the Waites, when they paid this note, were aware of any of the acts which, they now insist, raised such presumption. Where the fact of authority does not exist, one can not be heard to say that transactions of which he was not aware when he assumed the existence of such authority, justified him in such assumption. Moreover, in the present case, appellees, the Waites, did not, when they gave to Griggs in satisfaction of their note, before it became due, a less amount than the note called for, act upon any presumption induced by anything that appellant had done, that Griggs was authorized to so receive payment of said

note; on the contrary, it in this case by stipulation appears that Mr. Waite went to Grigg's office in December, 1892, and asked Griggs if Lawther was willing that this loan should be paid before maturity, and that Griggs said he would write to Lawther and ascertain. And that subsequently Griggs reported to Mr. Waite that he had ascertained from Lawther that Lawther was willing that the loan should be paid off before maturity.

Griggs did not write to Lawther as he said he would, and never did ascertain from his principal that he, Lawther, was willing the loan should be paid off before maturity. In respect to this, Griggs told to Mr. Waite a falsehood, and appellees relied upon an untruthful statement by Griggs; for their assurance that Lawther was willing that they should pay off their note before it became due, they had merely the misrepresentation of Griggs. The application to, and representation by Griggs, they have pleaded in their answer and stipulated in the record, an application and a representation upon which they relied, and which appellant was in no way responsible for. With reference to this, the remarks of the court in Doubleday v. Kress, 50 N. Y., page 410, as well as those in Crane v. Gruenwald, 120 N. Y. 274, are applicable. From this application by Waite and representation by Griggs, it appears that Griggs himself considered that he had not authority to receive payment upon this note before its maturity. He made no pretense of having any such authority—recognized the necessity of special directions in this regard, which special authority he afterward falsely assured appellees he had obtained.

Appellees urge that Griggs received money on loans before maturity, at his own discretion. In support of this they call attention to the testimony of Mr. Lawther. " From my own investigation and investigations of others, I believe that Griggs did collect money before maturity. I acquired that knowledge since his death."

It is too patent for discussion that Mr. Lawther was not, is not, and, in the nature of things, could not be, an expert as to what Griggs did in the collection of money upon loans

made by appellant, and that the belief of the witness in the premises is of no consequence.

As to the representation of Griggs upon behalf of Lawther, of payment of sums before maturity or the ratification by Lawther of any such action, the master reports that it appeared that in only two instances had Griggs received payments of sums before maturity, and that one of these was received only one day before maturity, and that the day of its regular maturity was Sunday, and the master further reports as follows: "Suffice it to say that I do not believe that upon the whole record there is sufficient proof of facts from which a general authority in Griggs to collect before maturity, can reasonably be inferred."

The note made by appellees, the Waites, payable to the order of appellant, was due March 3, 1893, and, according to its terms, upon that date it called for $3,090. This note was, by appellant, placed in the hands of Griggs, it must be presumed, that its terms might be carried out. It will hardly be claimed that, without express authority, Griggs, from the mere possession of the note, was authorized to receive payment of it in any other way than in accordance with its terms; yet, on December 20, 1892, he assumed to receive, in satisfaction thereof, the sum of $3,077. Appellees, in paying this amount to Griggs, well knew that they did not pay as they, by the terms of their note, had undertaken; that a reduction from what the note called for was made to them. They assumed that what Griggs said in respect to his authority concerning this note was true; it turns out that it was false.

We have been referred to no authority, and we are not aware of any, holding that from the mere possession of a promissory note, an agent may be presumed to be authorized to abate anything therefrom. Even in the case of Emery v. Gordon, 33 N. J. Eq. 447, to which we have been referred, the remarks of the chancellor, which we do not think are in accordance with the decisions of the Supreme Court of this State, do not go to the extent of sustaining the position now insisted upon by the makers of this note.

It is also urged by appellees, the makers of this note, that, although Margaret V. Waite borrowed this money from the appellant, Lawther, and gave to him her promissory note therefor, as a principal, yet, afterward, as between Lawther and Margaret V. Waite, now Mrs. Thornton, she became and was a mere surety, by virtue of her having sold and conveyed the land to Lucy C. Waite, now Mrs. Robinson, which she mortgaged to secure the note she gave for the money she borrowed from appellant.

We do not think that by such conveyance and the undertaking by Lucy C. Waite to pay the debt of Margaret, Margaret, as regards her relation to appellant, became a mere surety; nor does it appear that appellant has done anything by which his rights against Margaret, the primary and principal debtor to him, have been lost or prejudiced. As to this, the case of Fish v. Glover, 154 Ill. 8:, is instructive.

The master found, as a matter of law, that, as a consequence of the execution by the trustee of a release of the mortgage made by the Waites, such mortgage must be regarded as now secondary to the incumbrance which was given to the insurance company to secure a loan made by it upon the strength of such release and record. It appears by the testimony of Mr. Prindiville, the agent of the insurance company, who made the loan for it, he was aware that appellant's mortgage had been made and placed upon record. The mortgage of the insurance company was recorded December 16, 1892. The release of appellant's mortgage, executed by Griggs, bears date December 20, 1892. Mr. Prindiville further testifies: " The money on the loan " (meaning the loan made by the insurance company), " was paid subsequent to December 16, 1892, when the release of the former incumbrance and the canceled trust deed and notes were in my possession."

Across the face of the $3,000 note, payable by appellees, the Waites, to Lawther, when it was, before the making of this loan, delivered to the insurance company, was written : " Paid December 20, 1892. A. B. Lawther, per C. W. Griggs."

Across the face of the trust deed securing said note, were written these words: "Indebtedness paid and released, this 20th December, 1892. Charles W. Griggs, trustee."

The insurance company was thus, before it made its loan, informed by its possession of appellant's note, that the same was not due until March 3, 1893, and that Griggs had assumed to receive payment thereof December 20, 1892. It was therefore incumbent upon the insurance company to ascertain whether Griggs was authorized to receive payment of this note, and to release the security therefor given, three months before it became due. The insurance company thus knew that when it made its loan, the note given to appellant and the mortgage securing the same had then nearly three months to run. The insurance company, without inquiry, assumed that Griggs was authorized to do what he had done; it now appears that he was not so authorized. We are therefore of the opinion, in accordance with the holding of the Supreme Court in Keohane v. Smith, 97 Ill. 156, that the incumbrance of the insurance company is subordinate to the claim of appellant.

Our finding in this regard is not in opposition to any conclusion or finding of fact by the master; it is merely a dissent from his conclusion as to a matter of law.

The judgment of the Superior Court is reversed, and the cause remanded to that court with directions to add to the sum found by the master to be due upon appellant's note the interest that has since accrued upon the principal thereof, and award to him a decree for the foreclosure of his mortgage, not inconsistent with this opinion.