## Arthur H. Soden, Appellee, v. John Claney et al. On Appeal of John Claney and Willis P. Dickinson, Appellants.

### Gen. No. 18,923.

## Soden v. Claney et al. On Appeal of Citizens Bank of Mukwonago.

### Gen. No. 18,914.

1. FRAUD, § 115*—*when evidence sufficient to show conspiracy to defraud party furnishing money at foreclosure sale.* A person desirous of bidding in property at a foreclosure sale furnished another party with the money to bid in the property. Such party bid in the property and had the certificate of sale made out to a friend of his representing to the party procuring him to make the bid that it would be to his interest and that the deed should also be made in his name. The deed was thus taken in the name of the bidder's friend who afterwards refused to recognize that the person furnishing the money had any interest in the premises. The person furnishing the money brought suit in equity alleging he was the owner and entitled to premises and that the party bidding in the property and the party in whose name the deed was taken had conspired to defeat his interest in the premises. *Held* that a decree finding that the defendants had conspired together to defraud the complainant and that they had no interest in the property and ordering an accounting and conveyance of the property to complainant was sustained by the evidence.

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

2. FRAUD, § 37*—*when parties not in pari delicto.* Where a person made inexcusable statement upon the advice of another as a part of a plan to put the former in a false position, *held* that the parties were not in *pari delicto.*

3. EQUITY, § 254*—*when granting leave to amend bill after hearing not an abuse of discretion.* Granting leave to complainant to amend his bill after the hearing and before the decree, *held* not an abuse of the chancellor's discretion.

4. ESTOPPEL, § 42*—*what necessary for party to urge estoppel.* "It is essential to the application of the principle of equitable estoppel that the party claiming to have been influenced by the conduct or declarations of another to his injury was himself not only destitute of knowledge of the state of facts, but also was destitute of any convenient and available means of acquiring such knowledge."

5. ESTOPPEL, § 77*—*when bank advancing money on representations as to title cannot assert estoppel:* Where a person furnishing the money to bid on property at a foreclosure sale permits another to bid in the same and permits the certificate of sale and the master's deed to be taken in the name of a party other than the one who bid in the property, *held* under the evidence that the party furnishing the money was not estopped in equity to claim his interest in the property as against a bank which had advanced to the person bidding in the property on his representations as to his interest therein.

Appeal from the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Affirmed. Opinion filed March 31, 1914. Rehearing denied April 15, 1914.

ELA, GROVER, MARCH & ECKERT, for appellant Citizens Bank of Mukwonago; FRANK R. GROVER, of counsel.

HELMER, MOULTON, WHITMAN & WHITMAN, for appellant John Claney; FRANK A. HELMER, of counsel.

A. A. ROLF, for appellant Willis P. Dickinson.

HOYNE, O'CONNOR & IRWIN, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

Two appeals have been perfected in this case, one by Claney and Dickinson, defendants, and one by the Citizens Bank of Mukwonago, another defendant and also the complainant in a cross-bill. The appeals were consolidated for argument and will be considered together.

The essential provisions of the decree follow:—

The cross-bill of the bank was dismissed for want of equity.

The defendants John Claney and Willis P. Dickinson were ordered to surrender possession of the premises in question, consisting of a building formerly known as the "Concord Apartment House" and later as the "Kingsbury," together with a leasehold interest in the ground upon which the building stands; that within ten days after the entry of the decree Claney and Dickinson released to Arthur H. Soden, the complainant, all right, title and interest in and to the premises, and on their failure to do so that a master's deed thereof be made by a designated master; that the defendants and all persons claiming through and under them since the commencement of the suit be forever barred and foreclosed, etc.; that the defendant Claney account to the complainant for rents and profits received by him since he entered into the possession of the premises, and a reference to a master is provided for to take an account; that Claney and Dickinson pay the costs of the suit; that in lieu of the appointment of a receiver of the premises, as prayed for by the complainant, that the defendant Claney retain possession of the premises as had been provided for under an order entered earlier in the case; that he should hold possession of the premises subject to the orders of the court, etc.; that jurisdiction of the case be retained so that any of the parties to the cause might apply for the appointment of a receiver upon proper notice, etc.

Prefacing the decretal order thus epitomized the decree contains exhaustive findings, the substance of which may be stated as follows: The court finds that the complainant, Soden, on July 31, 1903, was the owner and holder of certain bonds of the Concord Apartment House Company, a corporation, which bonds were secured by trust deed to the Northern Trust Company, upon a certain leasehold estate described; that the said company having made default in the payment of the interest upon the bonds so held by the complainant, as well as upon other bonds the trustee had commenced suit to foreclose; that such proceedings had been had that a decree of sale had been entered May 26, 1903, directing a master in chancery of the Superior Court to sell said premises; that the complainant being desirous of protecting his interest in said premises conferred with the defendant, Willis P. Dickinson, in regard to said sale, with the purpose of bidding in the premises; that the defendant, Willis P. Dickinson, and his brother, John W. Dickinson, doing business under the firm name of W. P. Dickinson & Company, had sold through said John W. the said bonds of the said Apartment House Company, and that Willis P. Dickinson informed complainant that he would act for him in bidding at said sale and securing the title in the name of Charles A. R. Soden; that prior to said sale Dickinson advised complainant not to bid for said premises in his own name but in the name of his son, Charles A. R. Soden, and that complainant was also advised by legal counsel not to bid for the premises in his own name; that acting upon the advice of his counsel and Dickinson, complainant authorized Dickinson to attend the sale and bid in the property in the manner described, complainant placing in the hands of Dickinson a draft for $5,000 payable to the master in chancery to be taken as a deposit on any bid that might be made, and complainant agreed with Dickinson to furnish him with sufficient money to complete the purchase; that complainant

having full faith and confidence in the integrity of Dickinson and his representations, did not attend the sale but relied wholly upon Dickinson to represent him; that on July 31st a master's sale was had, at which the building, together with the leasehold for the unexpired term of ninety-nine years and nine months, was sold; that Dickinson attended the sale and made a bid of $48,000 in the name of the defendant, John Claney; that the amount of the deposit required was paid to the master; that Dickinson advised complainant that he had bought the property in the name of John Claney for $48,000 and paid $5,000 in cash; that John Claney was a friend of his, admitted that he had acted contrary to instructions and stated that he had a letter from Claney to the master in chancery to the effect that Claney had bid in the property and paid the money for the account of Charles A. R. Soden, and that when the master was ready to issue his certificate it should be issued to Charles A. R. Soden; that Dickinson also represented to complainant that the buying of the property in the name of Claney would put complainant in a better position.

The next finding is that the complainant believed the statement of Dickinson to be true and that Dickinson was acting wholly in the interest of complainant, and therefore consented that the certificate should be issued to Claney; that the certificate was issued, and at the request of complainant was by written assignment thereon, in August, 1903, transferred to complainant's son, Charles A. R. Soden, and delivered to complainant; that after the issuance of said certificate of sale by the master, Dickinson represented to complainant that it was better for him to allow the title to the premises to stand in the name of Claney, and advised complainant to let it appear that Claney was the bona fide purchaser and owner of the premises, and represented to complainant that Claney was a responsible business man and a friend of Dickinson who was willing to hold the title for the complainant at the

request of Dickinson and as an accommodation to him, and that Claney was an honest man and would turn over said premises to complainant when requested, which representations the complainant relied upon and believed to be true, returned the certificate of sale to Dickinson and consented that the deed issue to Claney.

The next finding is that at the time of the master's sale said premises were in the possession of a receiver appointed in the foreclosure suit; that on November 1, 1904, no redemption having been made, the master executed a deed to Claney, who entered into possession and has ever since continued in possession; that subsequent to the sale complainant was compelled to pay and did pay out large sums of money to protect the premises from liens and claims thereon; that Dickinson, pretending to be still acting in the interest of complainant, continued to write him assuring him that he was acting for complainant's best interests and that he held a declaration of trust from Claney for the benefit of complainant; that complainant made repeated demands upon Dickinson for the declaration of trust, but Dickinson made excuses for the delay in sending it and represented to complainant that the declaration had already been executed by Claney; that complainant was induced to believe and did believe that the representations of Dickinson that Claney recognized the rights of complainant, etc., were true, and that complainant therefore delayed any action to compel Claney to convey to him.

It is next found that the statements and representations of Dickinson as to the execution and delivery to Dickinson by Claney of the declaration of trust were false and fraudulent and made with the purpose and intent of deceiving and defrauding the complainant and inducing him to allow the title to remain in the name of Claney; that the defendant Dickinson has no right or equitable claim to the property but that his pretense that he has some equitable claim is a part of

the conspiracy between Dickinson and Claney; that Claney did not believe that Dickinson had an equitable interest in the property and did not advance any moneys to Dickinson because of any such belief; that Dickinson and Claney conspired together to obtain title to said premises in the name of Claney and to hold the same in his name for the purpose of defrauding the complainant; that for the purpose of enabling Dickinson and Claney to carry out their fraudulent scheme Claney pretended that Dickinson was indebted to him and that the premises were put in his name by Dickinson to secure such indebtedness; but it is further found that the alleged claims of Claney against Dickinson were part of the fraudulent scheme of Claney and Dickinson to defraud the complainant.

The next finding is that Claney pretends to have received from Dickinson an assignment of two certain contracts purporting to have been signed by complainant, under and by which Dickinson claims to have acquired some interest in the premises, but that the alleged signature of the complainant to each of the said alleged contracts is a forgery.

It is further found that the defendant, Claney, knew from the beginning that the complainant was the owner of said property, and had advanced all the money to purchase same at the master's sale and to remove the liens; and further that Claney had actual notice of the rights of complainant when the bid was made in his name and when the deed was issued to him; that Dickinson and Claney were associated in the transaction relating to the premises and in the acquiring of the title, and from the beginning intended to induce the complainant to permit the title to said premises to be taken in Claney's name, and in pursuance of the fraudulent purpose falsely represented to complainant that it was for his best interest to allow the title so to remain.

It is then found that Charles A. R. Soden had no interest in the premises or in money advanced to pur-

chase the same; that this fact was well known to Dickinson and Claney; that although Charles A. R. Soden had no interest in the premises, etc., he did in fact execute and deliver to complainant, before the filing of the bill, a written instrument transferring and assigning to him all rights, title, etc.

Further findings are that Claney has no equitable interest in said premises and holds the legal title in trust for complainant, and that complainant is the equitable owner thereof and entitled to a conveyance from Claney; that the defendant, Claney, had been receiving the rentals since November 1, 1904, and had been repeatedly called upon by complainant, before the filing of the bill, to render an account, which he has failed and refused to do, and that he has failed to turn over to the complainant any money whatever received from the premises, except the sum of $689.90, which was a balance in the hands of the receiver on November 1, 1904, which sum the receiver paid to Claney; that in 1904 and prior thereto the defendant Dickinson was engaged in business as a broker, and as such sold to the cross-complainant the bank notes of various persons, indorsed by Dickinson, and upon which he had become liable as indorser, as well as a note of John Claney & Co., a firm of which Claney was a member, the latter note being guarantied by Claney; that on or about June 30, 1904, Dickinson desiring to obtain an extension of time for the payment of said notes, made to the bank a written statement of his assets, in which he mentioned among other things an "interest in real estate northwest corner of Indiana Avenue and Twenty-fourth Street, clear $100,000," referring to the premises involved in this suit, and on or about July 1, 1904, represented to the bank that he owned a one-half interest in the premises and that Claney owned the other half; that on or about September 7, 1904, Dickinson, at the request of the bank, delivered to it his note bearing that date, for the sum of $11,060, payable six months thereafter, and at the

same time made a written assignment to one J. N. Crawford, of Mukwonago, an officer of the bank, of all his right, title and interest in and to the premises in question, together with certain notes and stock described in the assignment; and that said note of Dickinson was not given for any new indebtedness but was given to secure an indebtedness contracted and existing prior to the making of the note, and that the bank afterwards made substantial advancements to Dickinson, and took additional security; that on September 21, 1904, the defendant, Claney, in answer to an inquiry in regard to the real estate in which Dickinson claimed an interest (Dickinson having referred the bank to Claney), wrote a letter to the cashier of the bank as follows:

"In August, 1903, I bought the property in question at Master's sale, and paid something like $50,000 for the same on Mr. Dickinson's order, and I am still the record holder of same. The property is well located and the building, I think, originally cost for construction in 1896 about $300,000, and certainly could not be built for less than original cost. Rentals are about $2,500 per month gross; building is in good repair, etc.; insurance $150,000.

I do not know what Mr. Dickinson's interest is, but we have always understood it was large."

It is further found that on February 20, 1904, Claney received a sheriff's deed purporting to convey the premises in question under a judgment described in the evidence as the Tobey judgment; that some time in the summer of 1905, Dickinson sent to the bank a copy of an alleged contract between the complainant and John W. Dickinson and Willis P. Dickinson; that the bank and its officers never made any inquiry of Soden in regard to the property or his interest in it, nor the interest of Willis P. Dickinson nor Claney therein, nor communicated with him in any way, and that the complainant had no knowledge or information as to any claim of said cross-complainant to a lien or

interest in said premises, until a short time prior to the filing of the bill.

It is next found that after the year 1904 the bank continued for several years to extend the time for payment of the indebtedness of said Dickinson, and that collaterals securing said indebtedness were changed from time to time with the consent of the bank; that the bank made no further investigation or inquiries as to the title to said premises at the time of such extensions or changes of collaterals; and it is further found that the evidence as to the acts and conduct of the bank, its officers and of the complainant is not sufficient to create an estoppel as to Soden, and that as against him the bank has no right, title or interest in said premises and no equitable lien or claim whatever upon the same.

We are of the opinion that the findings of fact are fully warranted by the evidence contained in the record. The defendant Dickinson did not offer himself as a witness, but rests upon the proposition that the complainant did not establish the case charged in the bill. The asserted dignity of this attitude is only equalled by the discretion which it displays. The huge record in the case so teems with written and other evidence of his untruthfulness and his fraudulent and dishonest practices and acts, as to have made any other course extremely inadvisable. We do not understand it to be claimed by his counsel that he now has or ever had any interest in the property which is the subject of the litigation. In any event it is clear the evidence in the case would not warrant the assertion of such a claim. In his answer the claim is made, but the fact is not asserted, that he at one time had an interest which was assigned to Claney. The language is: "This defendant further answering claims that he did have an interest in said premises and that said interest was assigned to said John Claney."

As to the defendant Claney, it was admitted by his counsel in the oral argument that indebtedness for some amount existed in favor of the complainant and against him, for which a judgment at common law might properly be entered, but in the oral as well as well as the printed argument it was and is strenuously maintained that the acts and conduct of the complainant were such that he is not entitled to equitable relief. It is said that the bill should have been dismissed on the ground that the complainant, Soden, caused the property in question to be placed in the name of another than himself for the purpose of hindering and delaying his creditors and avoiding anticipating vexatious litigation.

Among the findings in the decree which, as heretofore said, we feel are fully warranted by the evidence, is one to the effect that Claney did not believe that Dickinson had an equitable interest in the property and did not advance any money to Dickinson because of such belief; that Dickinson and Claney conspired together to obtain title to the premises in the name of Claney and to hold the same in his name for the purpose of defrauding the complainant. We are of opinion that counsel for the complainant has made a correct deduction from the evidence, to wit, that the complainant was weak enough to be led into the folly of making untrue statements as to his interest in the property; that inexcusable as these statements were, they were advised by Dickinson as a part of his plan to put Soden in a false position. The parties are not in *pari delicto*. Dickinson and Claney were in Chicago, and Soden in Boston. Dickinson was the confidential agent and adviser of Soden. Dickinson is in no position to shield himself behind the contention that the complainant because he did the foolish things he was advised by Dickinson to do has no standing in a court of equity; nor is Claney in a different position, having conspired with Dickinson, as he was found to have done, to bring about the situation as it now exists.

Pomeroy's Equity, sec. 916; *Herrick v. Lynch,* 49 Ill. App. 657; affirmed in 150 Ill. 283.

The evidence tends to show that Soden was financially responsible; there is no proof that any creditor of his was hindered or delayed. Dickinson persuaded him that it was best for him to let the property rest in the name of someone else, and apparently created doubts in Soden's mind as to the intentions of different ones who had or were said to have claims against the property of Soden, upon which attachment proceedings might be brought if the property stood in the name of Soden.

From the findings with reference to the cross-bill filed by the Citizens Bank of Mukwonago, which findings, as heretofore stated, we are also convinced are supported by the evidence, we are of the opinion that the cross-bill was properly dismissed. The purpose of the cross-bill was to establish as a subsisting, equitable lien upon the premises, the claim of the bank consisting of the assignment of Dickinson's interest referred to in the findings. The letter of Claney to the bank, dated September 21, 1904, and above set forth, was in our opinion sufficient in itself to put the bank upon inquiry as to what interest, if any, Dickinson had in this property. The assignment of Dickinson's alleged interest was given September 7, 1904. At that time merely a master's certificate of sale had been given to Claney; it was not until November 1, 1904, that the master's deed was issued to him. More than two years thereafter, on May 20, 1907, the bank placed on record the assignment of Dickinson's alleged interest which it now asserts should be treated as an equitable mortgage binding upon all.

"It is essential to the application of the principle of equitable estoppel that the party claiming to have been influenced by the conduct or declarations of another to his injury was himself not only destitute of knowledge of the state of facts, but also was destitute of any convenient and available means of acquiring

such knowledge.'' 11 Am. & Eng. Encyc. of Law, 434; *Gallagher v. Northrup,* 215 Ill. 563.

As was said in *Vail v. Northwestern Mut. Life Ins. Co.,* 192 Ill. 567: ''A party desiring to claim the benefit of an estoppel cannot shut his eyes to obvious facts or neglect information easily obtainable, and then charge his ignorance to others.''

The acts and conduct of the bank, as set forth in the decree, were of such a character that, in our judgment, it cannot now claim the benefit of an estoppel as against the complainant.

It is alleged that the court erred in allowing the amended bill to be filed after the hearing and before the decree; that the court abused its decretion in ruling that the answers to the original bill should stand to the amended bill, and in refusing to permit other answers to be filed. It was held in *Gordon v. Reynolds,* 114 Ill. 118, that the granting of leave to amend the pleadings in chancery cases rests in the discretion of the court, and unless there is an abuse of discretion the action of the court will not be subject of review; that the amendment of a bill in chancery is properly allowed on the hearing, in furtherance of justice, to avoid the effect of a variance from the proofs; that it is not material when amendments are permitted to be made, except as to the terms the court may impose as a condition thereto; that the practice is highly commendable and absolutely necessary in a great many cases to a proper administration of justice. We are not satisfied that it was necessary in the present case that the bill be amended. Whether that be so or not the discretion vested in the chancellor was not abused. *Booth v. Wiley,* 102 Ill. 100; *The Tremolo Patent,* 23 Wall. (U. S.) 518.

The decree entered is, in our opinion, fully justified by the record and is affirmed.

*Affirmed.*