| 92 | 497 |
| 98 | 574 |
| 92 | 497 |
| 107 | 351 |

# Foster *v.* Winchester.

*Bill in Equity for Reformation of Deed, and Injunction of
Action at Law.*

1. *Conclusiveness of patent from United States.*—A patent for lands
under the homestead or pre-emption laws of the United States is
conclusive, as between subsequent purchasers from the patentee,
both as to the character of the land and the regularity of the pro-

[Foster v. Winchester.]

ceedings necessary to perfect the entry; and it can not be impeached on the ground that it was procured by fraud and perjury.

2. *Estoppel as to common source of title.*—When both of the parties to a suit claim title from the same person, or common source of title, each is estopped from impeaching that title.

3. . *Coming into equity "with clean hands."*—The general equitable principle, "that he who comes into a court of equity must come with clean hands," must be confined to misconduct in regard to the matter in litigation, so that it has in some measure affected the equitable relations between the parties arising out of the transaction.

APPEAL from the Chancery Court of Etowah.

Heard before the Hon. S. K. McSpadden.

All the facts are sufficiently set out in the opinion.

W. H. Denson, for appellant.—"He who comes into equity, must come with clean hands."—1 Pom. Eq., §§ 397, 401–2; *Kitchens v. Raburn*, 19 Wall. 263; *Smith v. Clay*, 3 Brown. Ch. 639; *Johnson v. Johnson*, 5 Ala. 97. Lands on which are situated mines are not subject to homestead entry or preemption, and the plea shows a violation of this law.—Rev. Statutes U. S., §§ 2258, 2262, 2289, 2290, 2291, 2301, 2302, 5440. All certificates of entry and patents issued for such land are absolutely void.—*Morton v. Nebraska*, 21 Wall. 260; *Richert v. Feefs*, 6 Wall. 160; *Minter v. Crommelin*, 18 How. 87; *Polk's Lessee v. Wendal*, 9 Cranch, 87; *Defferback v. Howke*, 115 U. S. 392. The invalidity of such entries or certificates may be shown collaterally, and in a court of law.—*Smelting Co. v. Kent*, 104 U. S. 636; *Steele v. Smelting Co.*, 146 U. S. 447. It is a universal principle of law, that no rights can arise upon a contract or transaction contrary to a statute.— *Wood v. Armstrong*, 54 Ala. 50; *Robinson v. Robinson*, 65 Ala. 610; 3 Brick. Dig., p. 145, § 58. Where parties are *in pari delicto* as to a contract entered into contrary to a statute, either party may show it, to defeat the assertion of any rights under it.—*McGhee v. Lindsay*, 6 Ala. 16; *Dudley v. Collier*, 87 Ala. 431; *Farrior v. New Eng. Mortg. Sec. Co.*, 82 Ala. 275; 2 Chitty on Contract, (11th Ed.), 975.

Dortch & Martin, *contra.*—Since the appellants and the appellee claim under the same party, and from the same common source, neither can attack the title under which the other claims.—*Pendley v. Madison*, 83 Ala. 484, and cases therein cited. 2. The patent can not be collaterally assailed, even by a party who does not claim under it.—*Steele v. Smelting Co.*, 106 U. S. 447; *Smelting Co. v. Kent*, 104 U. S. 636; *Gale v. Best*, 12 Am. St. Rep. 44. The doctrine invoked by the appellants, that parties must come into equity with clean

[Foster v. Winchester.]

hands, has no application in this case.—1 Pom. Jur. 434, §§ 399–400.

COLEMAN, J.—The averments of the bill show that by deed of conveyance, executed on the 28th November, 1873, Greenberry Hill conveyed to Winchester, Foster and Rathburn the N. E. ¼ of N. E. ¼ of section 34, Township 11, Range 5 east, in the district of lands subject to sale at Huntsville, Alabama. That subsequently Winchester purchased the interest of Rathburn and Foster in said lands; but in their deed of conveyance to him, executed on the 12th April, 1880, the lands were misdescribed, in that they were described as a part of section 30, instead of section 34. Under the purchase from Hill, the vendees took possession of the lands in section 34, and have held possession ever since. The bill further avers that some time in the year 1887 or 1888, Rufus Rhea and Thos. W. Leister, with full knowledge of the several purchases of Winchester of the land and his possession, purchased the same land from Greenberry. Hill. Rhea and Leister instituted ejectment proceedings against the lessees of Winchester in a court of law.

The bill was filed to correct the misdescription of the land in the deed from Foster and Rathburn to Winchester, and in a certain lease Winchester had executed to his lessees, and to enjoin the suit at law, and to cancel and annul the deed from Hill to Leister and Rhea. Respondents, Leister and Rhea answered the bill, the averments of which will be referred to hereafter, so far as material to the questions considered, and in addition to their answer filed a plea in bar. A motion to strike the plea from the files having been sustained, appellants appeal from the decree sustaining the said motion, and assign the same as error.

In considering the sufficiency of the plea, "every fact stated in the bill, and not denied by the averments in the plea, and by the answer in support of the plea, must be taken as true. If a plea be set down for argument by the plaintiff, without replying to it, the matter contained in it must be considered as true."—1 Danl. Ch. Pl. & Pr., (5th Ed.), § 694-5.

The plea sets up that the patent to Hill, the source of complainant's title, as shown in the bill, was procured by fraud and perjury committed by Hill at the instance and in the interest of Winchester, Foster and Rathburn, in representing to the Government that the lands were agricultural, when they were known to be mineral, and in reference to the residence, settlement thereon and cultivation of the same by Hill, the homestead applicant.

[Foster v. Winchester.]

The courts have uniformly held that the "patent is evidence that all previous steps had been regularly taken to justify making of the patent."—*Smelting Co. v. Kemp*, 104 U. S. 646. The Land Department "was established to supervise the various proceedings whereby a conveyance of the title from the United States to portions of the public domain is obtained, and to see that the requirements of different acts of Congress have been complied with. Necessarily, therefore, it must consider and pass upon the qualifications of the applicant, the acts he has performed to secure the title, the *nature of the land*, and whether it is of the class which is open to sale. Its judgment upon these matters is unassailable, except by direct proceedings for its annulment or limitations." "The action of the land office in issuing a patent, for any of the public lands subject to sale by pre-emption or otherwise, acting within the scope of its authority, is conclusive of the legal title, in all forms of judicial proceedings where this title must control." "The validity of a patent of the government can not be assailed collaterally, because false and perjured testimony may have been used to secure it, any more than a judgment of a court of justice can be assailed collaterally on like ground." *Steele v. Smelting Co.*, 106 U. S. 447.

The plea does not set up as a defense, that "the lands never were the property of the Government, or that no legislation authorized their sale, or that they had been previously disposed of, or reserved from sale."—106 U. S. 452–3, *supra*. The plea is that the Government was overreached and defrauded by perjury and misrepresentation. Neither does the answer or plea show any equitable rights of defendants to the land, from which they are excluded by reason of the patent issued to Hill and attacked by the plea. Furthermore, the plea carefully avoids admitting that Hill, the patentee, ever conveyed the land in controversy to Winchester, Foster and Rathburn, but makes very prominently the allegation that other lands, for which patents were at the same time obtained, and by the same fraudulent means, were conveyed to them. Such a plea is no answer to the bill.

The answer avers that Hill, the patentee, was seized in fee of the forty acres of land at the time respondents purchased the same from him, under and by virtue of the very patent which, in respondent's plea, it is averred was obtained from the government by fraud and perjury. Complainant in his bill traces his title to the same patent. If two persons claim title from the same person, or a common source, each is equally estopped from impeaching that title.—*Pendley v. Madison*, 83 Ala. 484; *Simmons v. Simmons*, 78 Ala. 365.

[Foster v. Winchester.]

The defendants, Rhea and Leister, as a further defense, invoke the equitable principle, "that he who comes into a court of equity must come with clean hands;" and insist, if the facts stated in the plea be proven, the complainant has been guilty of such iniquity, as to deprive him of any standing in a court of equity. The principle invoked does not, and never was intended to apply to all the transactions of the party seeking the aid of a court of equity. The principle has its limitations, and must be confined to misconduct in regard to the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the parties and arising out of the transaction.—1 Pom. Eq., § 399.

If a party, with intent to defraud his creditors, should convey his property to another, he can not afterwards compel a restoration of his property, thus fraudulently conveyed; but if, for a valuable consideration paid, he should repurchase the property from his fraudulent grantee, and the latter refuse a conveyance, a court of equity will compel a specific performance of the subsequent contract, and the grantee would not be allowed to resist a performance on the grounds that the original transaction was fraudulent; much less would a third party be allowed to defeat such relief, by pleading fraud in the original transaction, it not appearing that the granting of the relief in any manner affected his interest. The distinction brings the present case outside of the decisions cited and relied upon by appellants, and the rule as declared in *Conner v. Armstrong*, 86 Ala. 262; *Bogan v. Camp*, 30 Ala. 276; *Rensselaer v. Brice*, 4 Paige, 176; 1 John. Ch. Rep. 106; 1 Pom. Eq. *supra*.

It is a general rule, that a court of chancery, having jurisdiction for one purpose, will extend its jurisdiction to all matters in controversy. All matters in controversy, as here used, ordinarily refer to matters in some way germain to or growing out of the matter of equitable jurisdiction, and not to distinct matters or right, in no way dependent on or affected by the adjudications of the equitable questions involved. The relief sought by the bill is to have a misdescription of the lands in the conveyance from Foster and Rathburn to Winchester, and in the lease from Winchester to his lessees, corrected. The granting of this relief in no way affects or determines the priority or superiority of the several deeds of conveyance, the one from Hill to Winchester, Foster and Rathburn, and the other from Hill to Rhea and Leister. The granting of the injunction, temporarily, until the misdescription of the land has been corrected, if the proof authorizes it, may have been proper, but after this has been done, it may be that a

[Morris & Co. v. Alston.]

court of law is the'proper forum to determine the superiority of the legal title involved. This question is not raised directly by the assignments of error; but having been argued by counsel, we suggest the question for the consideration of parties interested. See *Hambrick v. Russell*, 86 Ala. 201, and authorities cited.

There is no èrror, and the decree of the lower court is affirmed.