GEORGE J. HERRICK

*v.*

THOMAS LYNCH *et al.*

*Filed at Ottawa May 8, 1894.*

1. ATTORNEY—*taking deed to aid grantor in defrauding creditors.* Where a person conveys all his real estate to his legal adviser, for the purpose of placing it beyond the reach of his creditors as well as to secure a debt due the grantee, and is induced to do so by the advice and artifice of the grantee, a court of equity will treat the deed as a mortgage, and allow a redemption, notwithstanding the fraud attending the transaction, the parties not being *in pari delicto.*

2. Equity will not tolerate the idea that an attorney may make use of his peculiar power over his client to procure a contract which is

illegal and contrary to public policy, and to then invoke the aid of the law to enable him to retain that which he has obtained through his fraudulent artifices.

3. CHANCERY—*jurisdiction—waiver of right to question.* Where a court of equity obtains jurisdiction of the parties and the subject matter, it will not pass upon the accounts of the parties by piecemeal; and when the defendant takes issue in respect of claims of indebtedness against him, and answers on the merits, he will waive all right he may have had to question the jurisdiction of the court.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of DeKalb county; the Hon. CHARLES KELLUM, Judge, presiding.

This is an appeal from a judgment of the Appellate Court, affirming a decree of the circuit court. The facts disclosed by the record are sufficiently stated by the Appellate Court, as follows:

"In the year 1888 Thomas Lynch, Sr., died in DeKalb county, seized of two farms, one in DeKalb county and one in LaSalle county, leaving no widow, but seven children, his only heirs-at-law. His son Thomas Lynch, Jr., was appointed administrator of his estate, and during his administration invested a part of the funds of the estate in the purchase of lot 3 in Mallory's addition to Leland, in LaSalle county, and had a conveyance of the same made to himself and his brother, Charles Lynch. Subsequently a conveyance was obtained from George Lynch, one of the children, of his interest in the real estate of his father, to Thomas and Charles Lynch. A reckoning was had between Thomas and Charles and the other children, and $2300 was borrowed by Thomas from one Meinke to make good funds which he had appropriated from the personal assets of the estate, and at the same time Charles borrowed from the same party $700, the other children becoming security for Thomas and Charles. Thomas secured a deed from Charles of his interest in the town lot in Leland, and he and Charles executed to their brothers and sisters a

mortgage on all of their interest in their lands for the purpose of indemnifying them as surety on the indebtedness to Meinke.

"On the 7th day of August, 1890, one Llewellyn obtained a judgment against Thomas and Charles for $200. On the 12th of August, 1890, appellant, George J. Herrick, obtained judgment against Thomas and Charles on a note of $175, upon which Charles was surety. On August 5, 1890, Charles executed and delivered to his brother, James Lynch, a mortgage for $2000 on all his interests in the real estate. On the 17th and 18th days of December, Thomas executed quitclaim deeds to Herrick of all his interest in the real estate inherited from his father, and the town lot in Leland. In May, 1891, a bill for partition of the farm lands, and for an accounting between the parties interested therein, was filed by all the children except Thomas, making Thomas and appellant parties defendant. The bill charged default upon the part of Thomas in failing to indemnify the complainants as surety upon the Meinke indebtedness, and asked that the rents and profits of lot 3 received by Herrick after his purchase from Thomas be paid over on such indebtedness, and asking a foreclosure of the mortgage given by Thomas to his brothers and sisters on said town lot 3. In June, 1891, an amendment to the bill was filed, setting up the judgments mentioned above, against Charles and Thomas, and the mortgage indebtedness from Charles to James, and alleging that it was about $1200. Herrick answered, denying the validity of the mortgage from Charles to James, averring that it was given for no consideration, and for the purpose of defrauding the creditors of Charles. Thomas failing to answer, a default was entered against him.

"A decree was entered finding the title in the farm lands as above set forth, finding that Herrick owned an undivided three-fourteenths, subject to the incumbrances, by virtue of his purchase from Thomas, and appointing commissioners to partition the lands. The commissioners reported that the lands

were not susceptible of partition, and appraised the same at $13,770. A decree for sale was entered, and in October, 1891, the lands were sold under the decree for $16,210. A few days before the sale Thomas filed an interpleader, charging that Herrick held title to his interest in the real estate simply as security for the note upon which judgment was entered against him and Charles, that Herrick had collected rents on the lot amounting to $137, which should be applied upon the note, and that he had offered to pay Herrick the balance due him, and requested a reconveyance, which was refused. The interpleader asks that the master in chancery, out of the proceeds of the sale, may pay what balance may be due Herrick, and that Herrick be required to reconvey lot 3 to him. He subsequently filed an amendment to his bill, in which he claims to have paid other moneys to Herrick. The question of accounting, liens, validity of the mortgage from Charles to James, having been reserved, the case was referred to the master in chancery to take proofs and make findings as to all the matters pertaining thereto, and the controversy between Herrick and Thomas Lynch, it being agreed that Herrick should be considered as denying all the material allegations in the so-called interpleader.

"There was no controversy on the general question of accounting between Thomas Lynch and his brothers and sisters, but the contest was as to the validity of the mortgage from Charles to James, and as to whether the deeds from Thomas to Herrick were given only as security for indebtedness held by Herrick against Thomas and Charles, merely, or were absolute conveyances, and whether Thomas advanced to Herrick the sums of money claimed by his amended interpleader. The master reported adversely to Herrick on all of the controverted questions. Exceptions were filed to his report, and upon a hearing the court overruled the same and rendered a decree approving the master's report, finding that the note and mortgage from Charles to James was valid and security

for a debt of $1270, with interest; finding the deeds from Thomas Lynch to Herrick were given as security only for indebtedness, and should be treated as mortgages; that the indebtedness from Thomas Lynch to George J. Herrick had been paid; that Thomas Lynch advanced to George J. Herrick the sum of $490 over and above the net rents of lot 3; that the rents had over-paid Herrick $150.78, and ordered that Herrick pay to Lynch the $150.78. From this decree Herrick appealed."

On entering its judgment of affirmance, the Appellate Court filed the following opinion:

HARKER, P. J.: "The controverted questions in this case are: First, whether the quitclaim deeds executed and delivered to appellant on the 17th and 18th of December, 1890, were given to secure indebtedness to be treated in equity as mortgages, or were absolute conveyances; second, whether, in the event of that question being decided against appellant, relief should not be denied Thomas Lynch, on the ground that the conveyances were made with fraudulent purpose of hindering and delaying creditors; third, whether Thomas Lynch advanced to appellant the sums of money claimed by the amended interpleader, as it is called in this case, and allowed by the master in chancery; fourth, whether the alleged advances to appellant could become the subject of adjudication in a court of equity; fifth, whether the mortgage from Charles Lynch to James Lynch was made in good faith and valid.

"The evidence in this record shows that Thomas Lynch, through mismanagement in the administration of his father's estate, had become largely indebted to the estate, and involved in difficulties with his brothers and sisters. In his embarrassment he applied to appellant, a lawyer without license, for advice and financial aid. Appellant furnished him some money, and undertook, through his advice, to lead him out of his difficulties. We entertain but little doubt that while appellant was thus acting as a legal adviser, various schemes by

which creditors of Thomas could be defeated of their claims were discussed and considered by the two. We are of the belief that these schemes were suggested by appellant.·

"We have carefully examined the testimony, and have reached the conclusion that the master's report and the finding of the court, that the deeds from Thomas Lynch to appellant were given as security for indebtedness, and should be treated as mortgages, were correct. It was a large amount of property to secure so small an indebtedness, and one of the purposes may have been to prevent other creditors from reaching it. We do not think, however, that under the circumstances there should be an application of that rule of equity which denies relief to one party against another when both have been engaged in a fraudulent transaction. The parties were not *in pari delicto.* One was legal adviser, the other client. The advice of the former being adopted, he procured title to the latter's interest in valuable real estate. Equity will not tolerate the idea that an attorney may make use of his peculiar power over his client to procure a contract which is illegal and contrary to public policy, and to then invoke the aid of the law to enable him to retain that which he has obtained through his fraudulent artifices. 1 Story's Eq. Jur. sec. 300; *Baehr* v. *Wolf et al.* 59 Ill. 474.

"We do not feel warranted in disturbing the finding as to the state of accounts between appellant and Thomas Lynch, and the order that appellant should pay Thomas the sum of $150.78. There was a sharp conflict betwen the parties on this branch of the case. The master, who heard the testimony and stated the account, saw the witnesses and observed their manner of testifying. His opportunities for judging correctly their credibility were superior to ours.

"We think the court had jurisdiction to adjudicate upon the matter of advances made by Thomas Lynch to appellant. Having obtained jurisdiction of the parties and the subject matter, there was no necessity of litigating over these accounts

by piecemeal. Having answered to the so-called interpleader, and taken issue upon the claim of this indebtedness, he waived all right, if he had any, to the question of jurisdiction.

"The views above expressed fully dispose of the contention that the mortgage from Charles Lynch to James Lynch was invalid. We may say, however, without entering into detail upon the merits of that question, that the evidence satisfies us that the mortgage was made in good faith."

Messrs. CARNES & DUNTON, for the appellant.

Messrs. JONES & ROGERS, and Mr. T. M. CLIFF, for the appellee Thomas Lynch, Jr.

Mr. LUTHER LOWELL, for the appellee James Lynch.

Per CURIAM: Counsel on both sides have filed in this court the same briefs prepared by them for and used in the Appellate Court, and no proposition is raised here which was not presented to and passed upon by that court. All the controverted questions raised are essentially questions of fact, and as to most of them the evidence is to a great extent conflicting. We have examined the record with care, and are of the opinion that the evidence sustains the decree. The opinion of the Appellate Court, as it seems to us, fairly and properly disposes of the points made by counsel, and any further discussion of them by us would therefore be superfluous. We are disposed to adopt the opinion of that court, and for the reasons there stated, the judgment affirming the decree will be affirmed.

*Judgment affirmed.*