(111 So. 22)
**SHANNON v. LUNSFORD et al.**
**(6 Div. 473.)**

(Supreme Court of Alabama. Nov. 4, 1926.
Rehearing Denied Jan. 20, 1927.)

**1. Equity ⬤➡408—Testimony taken by master held properly part of evidence on file to be used by party in position to offer it.**

Testimony taken by special master on agreed decree of reference after cause was at issue between original parties became part of evidence on file to be used on hearing by any party in position to offer it.

**2. Equity ⬤➡385—Testimony is offered by causing it to be noted in note of testimony.**

Under practice rules, testimony is offered by causing it to be noted in note of testimony.

**3. Equity ⬤➡358—Objection to testimony on file held available only to new parties brought into case.**

Where testimony, taken before special master, became properly part of evidence on file before certain defendants were brought in as new parties, objection thereto was only open to new defendants.

**4. Equity ⬤➡350—Rule requiring cause to be at issue before proof is taken is waived by offering of testimony.**

Rule, requiring cause to be at issue before proof is taken, may be waived and is waived by offering testimony.

**5. Trial ⬤➡85—General objection to testimony, part of which is admissible, is insufficient.**

General objection to testimony, part of which is material and pertinent, is insufficient; objector being required to point out portion objected to.

**6. Evidence ⬤➡211—Evidence, on file before defendant became party, that complainant had no interest in lease taken by defendant, held competent as judicial admission.**

In suit to declare that defendant as attorney held coal lease for benefit of complainant, evidence, taken before special master and filed

before defendant became party, that lease was taken by defendant for his own benefit and that complainant had no interest therein, *held* pertinent to issues under cross-bill of original defendant and was competent as judicial admission of party against interest.

**7. Evidence ⬡⟿256—No predicate is required to admit evidence of judicial admission against interest.**

Where evidence taken before master and on file before defendant became party and was competent as judicial admission, admissible as other admissions against interest, no predicate was required as in case of declarations of witness used for purposes of impeachment.

**8. Equity ⬡⟿65(1)—Attorney' cannot raise question of clean hands as regards third persons when called·to account for equities between him and client by reason of his advice.**

By reason of confidential relation between attorney and client and superior position of attorney in matters calling for legal advice, he cannot raise question of clean hands as regards third persons when called to account for equities arising between him and his client by reason of his advice.

**9. Trusts ⬡⟿110—Evidence held to show that coal lands were open to lease without priority of rights in complainant.**

In suit to declare that attorney held coal lease for benefit of complainant, evidence *held* to show coal lands were open to lease to any one without priority of rights in complainant or his associates.

**10. Trusts ⬡⟿110—Evidence held not to show attorney to be trustee as to coal leases or interest therein accruing from operation of lease by his corporation.**

In suit to declare that attorney held coal lease for benefit of former client, evidence *held* not to show attorney to be trustee for client as to leases or for interest therein accruing to client from operation of lease by attorney's corporation.

**11. Attorney and client ⬡⟿76(1)—Client's repudiation of agreement made in good faith by counsel with opposing side is just cause for counsel's withdrawal from case.**

Client's repudiation of agreement, made in good faith by counsel with opposing side with knowledge and approval of client, is just cause for withdrawal of counsel from further conduct of cause.

Appeal from Circuit Court, Walker County; Ernest Lacy, Judge.

Bill in equity by J. S. Shannon against Nora L. S. Lunsford and others. From the decree, complainant appeals. Affirmed.

W. A. Weaver and Theodore J. Lamar, of Birmingham, for appellant.

Complainant's motion to suppress should have been granted; the trial court should not have considered testimony taken on former trial and introduced in bulk. Code 1907, § 3172; Bell v. Chambers, 38 Ala. 660; Porter

v. L. & N., 202 Ala. 139, 79 So. 605; Dozier v. Joyce, 8 Port. 303; Yarbrough Turp. Co. v. Taylor, 201 Ala. 434, 78 So. 812; Evans Furniture Co. v. Meyers, 17 Ala. App. 65, 81 So. 843; L. & N. v. Dilburn, 178 Ala. 600, 59 So. 438. One ·availing himself of his position by abuse of confidence reposed in him by another will not be permitted to retain the advantage, although the transaction could not be impeached if no confidential relation existed. King v. White, 119 Ala. 429, 24 So. 710. The law presumes undue influence exerted by the attorney in transactions with his client, if he secures an advantage over his client; and the burden is on the attorney to show his client had competent independent advice, to refute this presumption. Bancroft v. Otis, 91 Ala. 279, 8 So. 286, 24 Am. St. Rep. 904; 13 Ency. Evid. 345. If, in, dealing with his client, the attorney secures an advantage, the law intercepts and fastens a trust upon the benefits he secures. Pearce v. Gamble, 72 Ala. 341; Singo v. Brainard, 173 Ala. 64, 55 So. 603; Dawson v. Copeland, 173 Ala. 267, 55 So. 600; Dickinson v. Bradford, 59 Ala. 581, 31 Am. Rep. 23. The knowledge of Rice was the knowledge of the corporations of which he was the head. King v. White, supra; Dunklin v. Harvey, 56 Ala. 177; Reid v. Bank, 70 Ala. 199. The principle that he who comes into equity must come with clean hands does not apply here. Foster v. Winchester, 92 Ala. 497, 9 So. 83.

A. F. Fite, of Jasper, and J. S. Stone, of Birmingham, for appellees.

Having agreed to the taking of the testimony, appellant cannot be heard to move to expunge it. Franklin v. Gwin, 203 Ala. 673, 85 So. 7. The complainant comes into equity with unclean hands, and he is not entitled to relief. 21 C. J. 182; Harton v. Little, 188 Ala. 640, 65 So. 951; Baird v. Howison, 154 Ala. 366, 45 So. 668.

BOULDIN, J. The original bill was filed March 10, 1917, by J. S. Shannon, present appellant, against Nora L. S. Lunsford, W. G. Lunsford, her husband, and Sarah E. Malone.

The purpose of the suit, as then presented, is shown in opinion on former appeal. Lunsford v. Shannon, 208 Ala. 409, 94 So. 571.

Thereafter, on November 18, 1923, complainant amended his bill making Charles E. Rice and Mount Carmel Coal Company, a corporation, parties respondent. On July 7, 1924, after proof taken an amended bill, "to meet the proof," was filed. Upon final decree, November 29, 1924, complainant was denied relief as against the parties added by amendment, and the bill dismissed as to them. The appeal is to review this feature of the final decree.

The amended bill, after presenting the case against the original defendants, and certain

matters relating to the relation of attorney and client between complainant and respondent Rice, proceeds:

"V. Complainant showeth that respondent, Chas. E. Rice, while under his employment as an attorney, as aforesaid, became fully advised by complainant as to the value of the mining lease on the properties formerly had by the Oak Leaf Coal Company, and upon which complainant had expended large sums of money in and about the matter of developing and opening up the mines and developing the same, and said respondent was also advised by complainant as to the trouble which he was having with the former coventurer or copartner, respondent, Lunsford, and he became advised as to complainant's desire to form a corporation, and to secure a lease from the University of Alabama to said property for the benefit of himself or said corporation, and about February 15, 1917, said respondent, Chas. E. Rice, with such knowledge as aforesaid proposed to complainant that a lease should be executed by the University of Alabama to him, said Chas. E. Rice, and he assured complainant that if he would make no claim for a lease to himself, and would permit the lease to be executed to him, or assist him in getting it, then he, the said Chas. E. Rice or a corporation which the lease would be executed or assigned to, would fully compensate complainant for everything which complainant had there, or of which he was interested in as a result of his expenditures on and to said property, as aforesaid, or of which he might, in equity, be entitled to, as a result of his said expenditures.

"(a) Complainant showeth that he gave full faith and credence to said assurance as made by the said respondent, Chas. E. Rice, and permitted or suffered a lease to be executed by the university to him.

"(b) Complainant showeth that he not only suffered said lease to be executed to said Chas. E. Rice, as aforesaid, but that on the date said lease was executed and signed, complainant and the said respondent, together, went from Birmingham to Tuscaloosa, and complainant paid the expenses of said trip, and before said lease was executed, complainant executed a promissory note to the University of Alabama, in satisfaction of all prior claims which it had against the Oak Leaf Coal Company, and that the consideration for the execution of said lease was the satisfaction of the said indebtedness of the said Oak Leaf Coal Company and the obligations to pay the minimum royalty of one hundred ($100.00) dollars per month thereafter, which fully appears in said lease, which was executed as of date February 15, 1917.

"(c) That afterwards, on, to wit, the 12th day of March, 1917, the said Chas. E. Rice organized or promoted a mining corporation known by the name of the Mt. Carmel Coal Company, Inc., to which company the said Rice proposed to or agreed to transfer the said lease which he had secured from the said University of Alabama.

"(d) Complainant further showeth that, believing said lease had been transferred to said Mt. Carmel Coal Company, Inc., and trusting and believing in the assurances made by the respondent, Chas. E. Rice, that he would fully protect complainant was led to expend large sums of money in the furtherance of the scheme or promotion or development of said property, and that part of the money which he so expended, was furnished by complainant to pay the royalty on the said lease which the said University of Alabama had executed to the respondent, Chas. E. Rice.

"VI. Complainant showeth that, beginning the early part of the year 1919, complainant became afflicted, was sick, and confined to his bed, and while in this condition, he was without the state of Alabama, being in the state of Kentucky, and while so afflicted, namely, during the months of May, June or July, the said respondent, Chas. E. Rice, was advised by the University of Alabama that unless the past due royalties were paid up, the said lease which had been executed to him, as aforesaid, by the University of Alabama would be canceled, but that no knowledge of the said cancellation was given to this complainant by the said Chas. E. Rice, though complainant had been fully assured by the said Rice that his interests would be fully protected, as aforesaid.

"(a) Complainant further showeth that before said lease was forfeited, respondent, Chas. E. Rice, made a tentative agreement with people other than this complainant, to promote a corporation, which corporation should secure in its own name, a lease from the University of Alabama, on the properties so leased to him, and which were previously leased to the Oak Leaf Coal Company, and on which complainant had expended large sums of money in opening up and developing the same, as aforesaid.

"(b) That long before said lease was canceled by the University of Alabama, as in this section referred to, said Chas. E. Rice, and others entered into an agreement that upon the forfeiture of said lease made by the University of Alabama to the said respondent, Chas. E. Rice, that they, as a body corporate, would acquire a lease from the University of Alabama on the properties described in said lease which the said Chas. E. Rice had from the University of Alabama, as aforesaid, and that in keeping with this agreement, they became a body corporate under the name of the Big Warrior Coal Company, and in consideration of the services rendered in and about the matter of procuring of said lease from the University of Alabama to the said Big Warrior Coal Company, it was agreed by the promoters of said corporation, of which said Chas. E. Rice was one, that said corporation would deliver to, or hold for the said Chas. E. Rice as payment for his said services, one-half of the capital stock of said Big Warrior Coal Company, which complainant believes and states the fact to be true, was so held or delivered to the said Chas. E. Rice, by said Big Warrior Coal Company; all of which acts of the said Chas. E. Rice, as in this section referred to, were without the knowledge or consent of the complainant.

"VII. That thereafterwards the Big Warrior Coal Company began developing the said property secured to it under its said lease from the University of Alabama, which development was had under the directions of the respondent, Chas. E. Rice, who was then its general manager.

"(a) That after the said Big Warrior Coal Company was organized, to wit, in the year

1920, it changed its corporate name to Mount Carmel Coal Company, and the University of Alabama consented for its said lease to be so altered or changed as to be a lease to the said Mount Carmel Coal Company, respondent herein.

"(b) Complainant further showeth that during the time the corporation known as the Big Warrior Coal Company existed, Chas. E. Rice, respondent herein, was its general manager, and thereafterwards, when it became the Mount Carmel Coal Company, the said Chas. E. Rice became its president, and so remained.

"(c) That said corporation known as the Big Warrior Coal Company and as the Mount Carmel Coal Company, as aforesaid, in its development of the properties covered by its said lease, knowing, or charged with knowledge from the records, that complainant had a lien on all and singular, the railroad, railway equipment, right of way, rails, spikes, and other mining equipment which formerly belonged to the Oak Leaf Coal Company, and which complainant held, as assignee, under the said mortgage of said company to the said Sterling S. Lanier, yet, nevertheless, said company appropriated to its own use a large portion of said property covered by said mortgage, which was the property of complainant, together with the equitable interest which complainant had in and to said leased premises.

"(d) Complainant further showeth that neither the said Chas. E. Rice, nor the Big Warrior Coal Company, nor the Mount Carmel Coal Company, nor any other person, has paid to complainant anything or any amount, or reimbursed him in any manner for said holdings, either in law or in equity, which are referred to in this section. * * *

"XI. Complainant charges and states the facts to be true, that by operation of law, the said Chas. E. Rice, when he acquired his said lease from the University of Alabama, he became a trustee, and held title to the same for complainant and the said Nora L. S. Lunsford, as their interest might appear.

"XII. Complainant charges and states the facts to be true, that due to the knowledge which respondent, Chas. E. Rice acquired in and about the property of the University of Alabama, and the possibilities of development of said property, while under the relation of attorney and client, and by operation of law, when he secured a lease from the University of Alabama for the Big Warrior Coal Company, which he promoted, that when he received for his services one-half of the capital stock of said company, by operation of law, he took the same as trustee for complainant and Nora L. S. Lunsford, as their interests might appear."

The bill prays:

"(e) That the court will order, adjudge, and decree that Chas. E. Rice, respondent hereto, was a constructive trustee, and that the income, profits, stocks or other benefit which he derived from the procurement of the lease from the University of Alabama, to the Big Warrior Coal Company and its successors, the Mount Carmel Coal Company, herein; and that the court will decree that he holds for complainant and the said Nora L. S. Lunsford, as their interest might appear, all income, profits, stock, or other benefit which he derived, or took, as said trustee; and that the court will decree a reference to the register of this court or some other suitable person, to state an account between complainant and respondent, Chas. E. Rice.

"(f) And the court will decree that the Mount Carmel Coal Company, respondent herein, having appropriated to its use the railroad track or mine equipment, of which the legal or equitable title was vested in complainant, as under his assignment of the said mortgage which was given to Sterling S. Lanier by the Oak Leaf Coal Company, and in which complainant has an equity otherwise, became a constructive trustee, and holds said property, together with the income and profits therein, subject to the further orders and decrees of this court; and that the court will decree that the said Mount Carmel Coal Company discover to complainant and this court the value of said property so appropriated, and its proportion to the total of its capital investment, and that a decree be passed, directing respondent Mount Carmel Coal Company to discover the amount and value of the property it appropriated, and of which the complainant had the legal or equitable title; and that a decree of reference be directed to state an account between complainant and Mount Carmel Coal Company.

"(g) That a decree be rendered, directing the Mount Carmel Coal Company to discover to the complainant and the court all and singular, the stock issued by it, and the amount paid for it in money, and the amount paid in services, and the names of the persons, separately and severally, to whom it was issued, together with the amount each paid in money or property, and the amount each paid by rendition of services, and the nature of the services so rendered, and that it discover the amount paid in dividends, salaries, or expenses to respondent, Chas. E. Rice; and complainant prays that the court will decree that this cause be retained for further decree to be rendered by the court upon the coming in of the reference hereinabove mentioned, and prayed for, and if complainant is mistaken in the relief prayed for, he prays for such other, further, or different relief, as the equity of his cause may require, as in duty bound, he will forever pray, and complainant hereby offers to do equity and abide by the decree of this honorable court."

The answer of Mr. Rice and Mount Carmel Coal Company, by general and special denials, put in issue the equity of the bill, with other averments sufficiently indicated in our findings upon the evidence.

[1] The evidence in the cause is voluminous. On the hearing below appellant moved to suppress, and here moves to expunge from the record as a whole, testimony noted by appellees on submission and appearing on pages 260 to 574 of the record. This testimony was taken in July, 1917, upon an agreed decree of reference to a special master, is identified, and its correctness shown by the testimony of the stenographer. The cause was then at issue between the original parties. Appellees had not then been made parties. It was properly a part of the evidence on file in the cause to be used on

the hearing by any party in position to offer it. Under our rules, testimony is offered by causing it to be noted in the note of testimony. It was not subject to a motion to suppress.

[2-7] If we consider the motion to suppress as an objection to the use of this testimony by parties brought in after the testimony was taken, because, not being parties, no issue was then made up as to them, we hold this was an objection open only to them. The rule requiring the cause to be at issue before proof is taken may be waived, and is waived by offering the testimony. A general objection to testimony, a part of which is material and pertinent, is insufficient. The objector should point out the portion objected to according to chancery rules. A portion of this evidence is that of complainant to the effect that the lease of the university lands was taken by Rice for his own benefit, and that complainant had no interest therein. This evidence was pertinent to the issues under the cross-bill of Mrs. Lunsford at the time. Moreover, such evidence, when identified, was competent as a judicial admission, admissible as other admissions of a party against interest. No predicate is required as in case of declarations of a witness used for purposes of impeachment. It is original evidence of facts thus admitted by a party to the record.

[8] Appellee in argument submits that the decree of the lower court should be affirmed without the necessity of considering all the issues in the record upon the ground that complainant does not come into court with clean hands. This, because it appears, upon complainant's version, that the lease was taken in the name of Mr. Rice to conceal complainant's ownership and defeat the equities of Mrs. Lunsford therein in contemplated litigation. We cannot thus summarily deal with the case for different reasons.

The contemplated litigation began soon thereafter by the original bill in this cause. Complainant had acquired at bankruptcy sale coal mining properties which he desired to operate; he negotiated through W. G. Lunsford a loan of $5,000 from Mrs. Lunsford and a like sum from Mrs. Malone, secured by a mortgage to them jointly upon his private property. Presently an agreement was entered into for a partnership between Shannon and Mrs. Lunsford for a joint mining venture. The bill avers Mrs. Lunsford failed to put in the money agreed; that as a result no lease had been acquired from the university as contemplated; that mining operations had ceased and the joint adventure ended.

The bill seeks to have a settlement of the partnership. The amount of money put in by each of the partners is still undetermined. At this stage we would not declare, ex mero motu, that complainant could not rightfully obtain a lease with a view of recouping his losses and launching a successful mining venture.

Again complainant's contention is that Mr. Rice was at the time his legal adviser, and the lease was so taken on his advice as attorney. We fully approve the rule that by reason of the confidential relation between attorney and client, and the superior position of the attorneys in matters about which he is called upon for legal advice, the attorney will not be permitted to raise the question of clean hands as regards third persons when called to account for equities arising between him and his client by reason of his advice. Phillips v. Bradford, 147 Ala. 347, 41 So. 657; Herrick v. Lynch, 150 Ill. 283, 37 N. E. 221; Foster v. Winchester, 92 Ala. 497, 9 So. 83.

We deem it necessary, therefore, to consider the pleadings and proof, the entire record so far as pertains to the asserted equities of complainant Shannon against Rice and Mount Carmel Coal Company.

[9] Addressing ourselves to this task, we must limit the decision to findings of fact upon controlling issues, with such observations as indicate grounds of our holding. The property really acquired and used by the partnership consisted of mining equipment, the major part being a mining railroad connecting with the Frisco at Cordova, and extending about two miles to the mines located on the lands of the University of Alabama. Without the mines, the railroad had merely a scrap value. The partnership, operating under the name of Diamond Coal Company, never acquired any lease to the coal lands, and in its mining operations was a trespasser. Lunsford v. Shannon, 208 Ala. 409, 94 So. 571. In the spring of 1916 the mining operations were suspended on demand of the university.

Robison Brown, land commissioner of the university considered the railroad as an accessory of value to a lease of the university lands. In the fall of 1916 Shannon acquired a 30-day option for a lease upon organizing a solvent corporation and paying or securing $1,000 on account of accrued royalties. Mr. Bissell entered into negotiations for the entire holdings, including a lease, with clear title on basis of $17,500. Shannon and Lunsford were in controversy as to amount each had contributed to the joint venture; no settlement was reached between them; a clear title free from prospective litigation could not be had; the Bissell proposition failed; and the option or tentative agreement with the university lapsed. The coal lands were open to lease to any one, without priority of right in Shannon or associates. This was the situation February 15, 1917. Mr. Shannon and Mr. Rice had been friends since the latter's boyhood. For some years Shannon had freely called upon Rice for casual advice, rendered without charge or offer to pay; Mr. Rice had represented him in a few

matters, but had no general retainer. Beginning in the fall of 1916, Shannon began conferring with Rice touching his troubles in his mining venture, going over the whole matter, claiming Mrs. Lunsford had not furnished the full amount of money for which he had given the mortgage, had not furnished the funds called for under the partnership agreement, and that he had invested $10,000 to $20,000 in the venture which failed. Mr. Rice advised him to bring suit, if need be, for accounting and settlement. This was postponed in the hope of a settlement with Lunsford. Mr. Rice conferred with Mrs. Lunsford in aid of such settlement. In the Bissell negotiations Mr. Rice drew the contract. Looking to that deal he drew an assignment to Mr. Shannon of a mortgage given by the old bankrupt company to Lanier and still outstanding against the property. Rice had learned something of the mining property, was informed of the status as to a lease, and advised Shannon some one would get a lease thereon. Although no formal contract had been made between Shannon and Rice, no fee or retainer been paid, and no directions yet given to file a suit against Lunsford, we are of opinion the relation of legal adviser touching these properties obtained in such manner as brought the parties within the rule announced in King v. White, 119 Ala. 429, 24 So. 710, thus:

" 'Whenever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of the confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation existed.' "

[10] The real inquiry in the case is whether and wherein any property interest or right has accrued to Shannon by breach of duty on the part of Rice under this rule.

The first amended bill filed by Shannon bringing in Rice and his company proceeded on the theory that the lease of February 15, 1917, was taken in the name of Rice, but for the sole use of complainant as the real owner of the lease; that Rice was to hold the lease in trust without beneficial interest in himself. Complainant's testimony taken under that bill tended to support such contention. The amended bill now before us abandons such contention, and alleges an agreement at the time that on obtaining the lease Rice or his company "would fully compensate complainant for everything which he had there or which he was interested in as a result of his expenditures on and to said property." Still, the last amended bill alleges as a conclusion and prays relief on the theory that Rice was in law a trustee for complainant as to the lease itself, and of all stock or other interests accruing as a result of all later operations. Suffice to say the testimony of Mr. Shannon in 1917, that of Mr. Rice, the conduct of the parties in relation to the matter, all negative such claim. The lease to Rice was not a gratuity. It was a matter of purchase for a consideration, a minimum royalty of $100 per month, a promise to promote active mining operations yielding a substantial income to the university, besides giving a note for $1,000 for back royalties. If Shannon was the beneficial owner of the lease, it developed on him to meet all these obligations. The subsequent cancellation of this lease for nondevelopment and default on minimum royalties would thus be due to Shannon's breach of obligation, and leave the matter open to a new lease to Rice or any one else.

The facts are that Rice proceeded promptly to organize a corporation, taking the stock in his own name, except nominal amounts to third persons for purposes of a charter; paid the royalties for some 18 months of his own funds except probably certain sums mentioned later; and paid the note given by complainant and him for back royalties due the university.

From the whole evidence we find the following touching the lease from the university to Rice: Seeing that Shannon had failed in the joint adventure with Lunsford, that a lawsuit between them was probable, that Shannon was in no position to take a lease on the property, that the tangible effects in which he was interested were accessory to mining operations and mainly dependent on same for value, believing that a lease could be made a profitable investment, that it was liable at any time to be taken by strangers, Rice took the lease himself with the co-operation of Shannon. This was not only subject to the duty arising from confidential relations, but, upon an express understanding stated by Mr. Rice thus:

"I told him that it seemed to me that unquestionably some one was going to lease that property, and I was going to get it, and I believed I could get a lease on the property, and if I did get it, that I would deal fairly with him, or the company would, on the purchase of whatever interest he had in everything there."

This, in our opinion, was the measure of duty and obligation assumed by Mr. Rice at the time. What followed determines the rights of the parties. Both parties entered in good faith upon the execution of the contemplated plans.

Rice negotiated with Robinson & Co., coal dealers, for a loan or advance of $1,000, and $2,000 more when the mines were in operation. A corporation was chartered under the name of Mount Carmel Coal Company, Inc. Shannon received $500 of the money ad-

vanced by Robinson & Co. and paid two of the $250 notes given them by Rice at or near maturity. Our conclusion, on a study of the evidence, including checks from Shannon to Rice, letters from Rice to Shannon, and the testimony of witnesses, is that Shannon furnished one-half the money to pay minimum royalties for some eight months, that he kept a caretaker on the property at his expense, and probably incurred other expenses looking to getting mining operations started. As no evidence of either side shows a purpose to go into a partnership, joint adventure, or stock sharing between the parties, these outlays are attributed to a co-operative spirit in carrying the lease and conserving the property while awaiting developments.

Both parties recognized the pending unsettled controversy with Lunsford as a hindrance to operations. It was found outlays of several thousand dollars were necessary to put the railroad, including trestles, in condition for use. Failing in a settlement with Lunsford, the original bill was filed within a month after the lease was taken. The bill was drawn in emergency by Mr. Stone, law partner of Mr. Rice. In view of Rice's position as a prospective purchaser of the properties, it was deemed best that the suit be conducted by an attorney in position to give disinterested advice. So, at request of Rice & Stone, with complainant's concurrence, the bill was signed by Mr. Bankhead of Jasper as counsel. Complainant, however, made no arrangements with Mr. Bankhead to conduct the suit. Mr. Stone drew the answer to the cross-bill of Mrs. Lunsford and represented him in taking the proof in July following. The litigation being prolonged, the opening of the mines being thereby delayed, Rice & Stone, with approval and co-operation of complainant, entered into negotiations with Lunsford's counsel to sell the mining properties in which Shannon and Lunsford claimed equities at public auction and bring the money into court in lieu of the property. Such an agreement was reached with Mrs. Lunsford in the summer of 1918, whereupon Mr. Shannon notified Mr. Stone he would not consent to any sale until his interest was determined. Stone notified Rice, who conferred with Shannon and received the same reply. Rice made an offer of $4,000 for his interest, which was refused. Rice notified Shannon that if such was his view, he was through; that he would proceed to develop the mines. Mr. Stone declined to proceed further in the case and so notified Mr. Shannon. No retainer was paid or agreed to be paid.

The university complained of delay in operating under the lease, as well as default in payment of minimum royalties. Long correspondence resulted, finally terminating in a cancellation of the lease by the university in May, 1919. A study of this feature of the evidence convinces us there was no conniving at this result by Rice. He used all persuasive effort to hold the lease intact until he could develop the mines. Royalties for several months, however, were in arrears when it was finally canceled.

In July following Rice interested eastern capital, adjusted old matters with the university, and succeeded in getting a new lease to Big Warrior Coal Company, a corporation promoted by himself and new associates. The name was later changed to Mount Carmel Coal Company, the present defendant. Rice became president. This company proceeded to develop the mines, built a new railroad on new right of way, erected buildings, installed equipment and machinery, made new openings, all at an expense of near $250,000. Mining operations began in 1921. Some $14,000 were paid in royalties in 1921, 1922, and 1923.

In the construction of the new railroad, Mount Carmel Coal Company, under the direction of Rice, used rails from the old railroad taking them by purchase from one Hood claiming to own the land on which the road was located. The bill was dismissed without prejudice to the right of complainant to sue at law for appropriation or conversion of these rails or other personal property.

Shannon remained silent and inactive until the amended bill was filed, November, 1923.

This, we think, a summary of the salient facts, as we find them from the whole evidence, which is not without conflict at many points.

We draw the following conclusions:

The obligation to treat complainant fairly in the purchase of his interests was at the time understood to mean such purchase as could make the property available in carrying out the terms of the lease.

This had already proven impractical without some adjustment of the claims of Shannon and Lunsford therein, or a joint disposition of the holdings of both. It was not contemplated that Rice should take over a lawsuit.

Rice & Stone rendered a full measure of service in bringing and forwarding the suit to effect a settlement and sale of the property.

The suit being prolonged, the property depreciating, accumulating expense, and endangering the lease, we find no want of good faith in the advice to sell by agreement, and let the proceeds stand in lieu of the property. The obligation of Rice to make it would bring a fair price at such sale would obtain. Complainant would have the protection of the court to that end.

[11] The repudiation of an agreement made in good faith by counsel with the opposing side with the knowledge and approval of his client is a just cause for the withdrawal of counsel from the further conduct of the cause.

Complainant, at that stage, assumed the duty of getting the property in shape to pass it to Rice for the purposes of his lease. This was never done. Complainant was at least equally responsible for the final cancellation of the lease to Rice. This ended the relation between the parties as regards the property in question. The subsequent acquirement of a lease by Rice, the launching of a successful enterprise recouping his loss and maybe reaping a profit to whatever amount, could not renew or reinstate the obligations theretofore forfeited.

We think the decree of the court was without error.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.