## Christ Kapalos et al., Appellees, v. John Ganas et al., Appellants.

### Gen. No. 30,938.

1. CHATTEL MORTGAGES—*insecurity of mortgagee as ground for refusing to set aside foreclosure procured by fraud upon mortgagor.* Where the holder of a chattel mortgage, by fraudulent representations, procured the consent of the mortgagors to a pretended foreclosure and sale, thereby divesting them of their title, a decree relieving the mortgagors from the foreclosure was proper, notwithstanding the mortgagee had sufficient cause to deem himself insecure.

2. EQUITY—*right to relief where culpability of complainant not equal to that of defendant.* A court of equity will set aside a pretended foreclosure of a chattel mortgage, at the suit of the mortgagors, where their consent thereto was procured by false representations that the transaction was a friendly one for the purpose of protecting the parties from interference by third party creditors, notwithstanding the mortgagors participated in the fraudulent purpose to the extent of agreeing thereto at the solicitation of the

mortgagee, their culpability being less than that of the mortgagee.

3. CHATTEL MORTGAGES—*when foreclosure properly set aside without decreeing relief to mortgagee.* Evidence in a suit to set aside the foreclosure of a chattel mortgage upon the ground of fraud held not to show error in refusing to decree payment to the mortgagee of the amount found due under the mortgage.

4. CHATTEL MORTGAGES—*construction of decree setting aside foreclosure.* Decree setting aside foreclosure of chattel mortgage held not to have divested the mortgagee of his leasehold interest in the premises under the chattel mortgage, but merely to have restored the parties to the position they occupied prior to the foreclosure.

Appeal by defendants from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1926. Affirmed. Opinion filed November 17, 1926. Rehearing denied December 2, 1926.

JOHN C. GEKAS, for appellants.

No appearance for appellees.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal the defendants seek to reverse a decree of the circuit court of Cook county, whereby the defendants were perpetually enjoined from interfering or molesting complainants in the possession of certain premises located at the corner of North Cicero Avenue and West Lake Street, Chicago.

The record discloses that the complainants, who were tenants, were conducting a restaurant in the premises located at the intersection of North Cicero Avenue and West Lake Street, Chicago; that the defendant, Ganas, held a chattel mortgage on the personal property of the complainants located in the restaurant and claimed that the same chattel mortgage conveyed to him complainants' leasehold interest in the premises; that on February 18, 1924, a pretended sale of the property covered by the chattel mortgage

was made, and thereupon the purchasers ousted complainants from the premises.

The facts in brief compass are, as alleged in the bill and found by the decree, that Sam Pulos and John Turlas on March 1, 1923, leased part of the premises in question from Mary E. Fagan, for a period of six years at $75 per month, and on the same date they obtained another lease for the balance of the premises from Mary King and her husband, Patrick J. King, for a period of ten years at a rental of $35 per month. Upon the execution of these leases Pulos and Turlas took possession of the premises and conducted a restaurant therein. On March 12, 1923, they borrowed money from the defendant, Ganas, and executed a chattel mortgage to secure the payment of the money, and the mortgage purported to convey the chattels in the premises as well as complainants' leasehold interest. Afterwards Pulos and Turlas sold out their interest in the restaurant so that it came to be owned and operated by complainants, Christ Kapalos, John Margaretes and George Kastran. On November 11, 1923, complainants executed a chattel mortgage to the defendant, Ganas, which assumed and confirmed the prior chattel mortgage and conveyed the chattels in the premises in question and purported to convey the leasehold interest which complainants had in the two leases. It further appears from the record that complainants paid the rent reserved by the two leases and made payments on account of the indebtedness secured by the chattel mortgage; that the defendant, Ganas, on or about February 10, 1924, called at the restaurant and inquired of complainants as to whether the restaurant business was prosperous, and was advised that complainants were doing a successful business but had experienced some difficulty on account of the fact that Sam Pulos, one of the former owners of the restaurant had left Chicago owing a number of bills, although he had made an affidavit to the effect that he

did not owe any bills at the time he sold out, and that some of his creditors were endeavoring to make complainants pay his indebtedness; that thereupon the defendant, Ganas, suggested that this difficulty might be obviated by a friendly foreclosure of his chattel mortgage, wherein notices would not be posted until about 30 minutes before the sale was to take place; that the property could be sold to a third party, who in turn would reconvey it to complainants and they could then make a new mortgage to Ganas. This suggestion was agreed to by complainants and a pretended sale of the property was had about three o'clock in the afternoon of February 18, notice of the foreclosure having been posted but 30 minutes before that time. George N. Sellas was the purchaser at the pretended sale and, immediately upon the sale being made, complainants were ejected from the premises and the new owner and other defendants took possession and have since then continued to operate the restaurant despite complainants' protest. Complainants filed their bill to be relieved from the purported foreclosure. The defendants answered the bill denying that there was any collusion and affirmed that the sale was regular and valid in every particular. The case was tried before the chancellor who found from the evidence that substantially all of the allegations of the bill had been sustained and that the sale was fraudulent and granted complainants the relief prayed for.

The defendants contend that the decree is wrong and should be reversed because the defendant, Ganas, who was the owner of the chattel mortgage had sufficient cause to feel himself insecure, and, therefore, under the provisions of the chattel mortgage, he had a right to foreclose the mortgage. It is obvious that this point cannot be sustained. The court found that Ganas had been guilty of fraud and foisted his scheme upon complainants. The evidence is not in the record

and we must assume that it was sufficient to warrant the finding of the chancellor.

The defendants further contend that the decree must be reversed because complainants did not come into equity with clean hands and that in such case equity will grant no relief. It is a maxim of equity "that he who comes into equity must come with clean hands" and where complainant does not come into equity with clean hands he will be given no relief. This rule of equity, however, has its limitations and does not apply to every unconscientious act or inequitable conduct on the part of a complainant. It will not always be applied where the parties are not *in pari delicto*. This principal is founded mainly upon motives of public policy and in such case "the court may give relief against the improper transaction, or may even enforce the obligation arising from the tainted agreement, at the suit of one of the parties thereto * * *. Assuming that a contract is fraudulent, or against public policy, or illegal, still, where the parties to it are not *in pari delicto,* and where public policy is considered as advanced by allowing either, or at least the most excusable of the two, to sue for relief, relief may be given to him, either against the transaction by setting it aside and restoring him to his original position, or even, in some cases, by enforcing the contract, if executory." Section 403, 1 Pomeroy on Equity Jurisprudence (4th Ed.). So in the instant case we are of the opinion that while the complainants were parties to the scheme agreed upon for the pretended foreclosure of the chattel mortgage, yet we are clearly of the opinion that complainants are the most excusable; that the scheme was originated by the defendant, Ganas, and the court found that the other defendants were also involved. It would certainly be a harsh rule that would deny relief to complainants in the instant case where such rule would permit the defendants to obtain benefits

from the most glaring fraud. The holding which we make is supported by our Supreme Court in the case of *Herrick v. Lynch*, 150 Ill. 283.

Complaint is also made that the decree is wrong because complainants were not required to pay the amount actually found due under the chattel mortgage, and this too, despite the fact that complainants in their bill offered to do equity by paying the defendant the amount which was found to be due. We have no evidence in the record, so we are unable to say whether the chancellor was warranted in failing to require complainants to pay the amount found due. In fact we have no means of knowing what the situation was as disclosed by the evidence. In these circumstances we cannot hold that the chancellor was wrong.

The defendants further contend that the chattel mortgage which purported to convey the complainants' leasehold interest in the premises was valid and binding and the court erred in divesting the mortgagee, John Ganas, of his interest in the leasehold under his chattel mortgage. We think this argument is based upon a misapprehension of the record. While there are findings in the decree to the effect that Ganas acquired no interest in the leasehold by virtue of his chattel mortgage, yet in the decretal part, it is expressly ordered and adjudged that the defendants be enjoined ''from interfering with, or in any manner molesting complainants in the possession and enjoyment of the premises * * * and also the personal property specified in the chattel mortgage * * *, except in the enforcement of the legal rights of any of said parties under said chattel mortgage.'' From this it appears that the chancellor merely set aside the foreclosure sale and all subsequent proceedings taken by the defendants and did not pass upon the

question whether the leasehold interests were covered by the mortgage.

The decree of the circuit court of Cook county is affirmed.

*Affirmed.*

TAYLOR, P. J., and THOMSON, J., concur.